DOMINICK CULLALUCCA *vs.* PLYMOUTH RUBBER COMPANY.

Suffolk.   January 27, 28, 1914. — April 4, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* Employer's liability, *Res ipsa loquitur.   Evidence,* Presumptions and burden of proof.   *Practice, Civil,* Amendment before this court.   *Supreme Judicial Court,* Amendment.

In an action for personal injuries sustained by the plaintiff while in the employ of the defendant by reason of a revolving shaft, on a machine that the plaintiff had assisted in operating for about five months, catching the end of a roll of cloth that the plaintiff was carrying and drawing in his hand and arm after it, the defendant's answer consisted of a general denial, and, when the case was brought before this court for the argument of exceptions, the defendant under St. 1913, c. 716, § 3, moved to amend his answer by adding an allegation that the plaintiff's injuries were received in the ordinary course of his occupation from an obvious danger, the risk of which the plaintiff assumed by entering and continuing in the defendant's employ.   The motion was denied on the ground that the amendment was needless, this defense being open to the defendant under the general issue; because an employer is not bound to change the conditions manifestly existing when a contract of employment is made, and an assertion of this principle is a different thing from an affirmative defense of *volenti non fit injuria,* where it is necessary for the defendant to allege and prove that the plaintiff knew of the danger to which his injury was due and voluntarily incurred the risk of it.

The rule, that the sudden automatic starting into motion of a machine when it ought to be at rest, if unexplained, is in itself evidence of a defect in the machine and of negligence in its maintenance, is not to be extended to a sudden unexplained increase of speed in a machine already in motion, which is operated by means of power transmitted through a system of shafting.

In an action for personal injuries sustained by the plaintiff while in the employ of the defendant by reason of a revolving shaft on a machine that the plaintiff was assisting in operating catching the end of a roll of cloth that the plaintiff was carrying and drawing in his hand and arm after it, there was evidence that before the accident the speed of the machine increased to a certain number of revolutions a minute, but there was nothing which would warrant the inference that the increase of speed had anything to do with the occurrence of the accident, and it was *held,* that, if any negligence of the defendant caused the increase of speed, it was negligence which did no harm to the plaintiff and could not be made the ground for recovery.

TORT for personal injuries sustained by the plaintiff while in the employ of the defendant on February 14, 1910.   Writ dated March 19, 1910.

The declaration contained three counts, the first alleging a defect in the ways, works or machinery of the defendant, the second alleging negligence of a superintendent, and the third, at common law, alleging negligence in failing to furnish the plaintiff with a safe place to work and in setting him at work in a dangerous place without warning or instruction in regard to the dangers.

The answer consisted of a general denial.

In the Superior Court the case was tried before *Wait,* J. The plaintiff's left arm was caught in a machine known as a "spreader," which he was assisting to operate, and was injured so that it was necessary to amputate a part of the arm. At the time of the accident the plaintiff was eighteen years old, and had been employed by the defendant about five months doing the same work that he was doing at this time. He had come to this country about six years previously, and before entering the service of the defendant had worked at various outdoor occupations, but never had worked in any factory.

The purpose of the machine was to spread a rubber coating on rolls of cloth, and it required two men to operate it. It consisted of a cylindrical roll (which was called in the evidence the "rubber roll" and the "front roll") at the front end, which did the spreading, and a series of horizontal steam pipes, about sixty in number, over which the cloth passed to a large drum at the rear end, and thence to a roll underneath. Below the spreading roll was a device for holding the roll of cloth. The machine was about eighteen feet long, about six feet wide and about four feet high, and the supporting framework was of wood. Along the left side of the machine and about five or six inches below the level of the steam pipes ran a shafting driven by bevel gears and in turn driving the drum at the rear end of the machine.

At the time of the accident the machine had just been started, and the plaintiff was walking from the front to the rear of the machine along and near the revolving shaft, carrying the end of a roll of cloth which he was to put around the rear drum. This cloth came in contact with the revolving shaft and was wound around the shaft, drawing the plaintiff's hand and arm in with it and causing the injury complained of. The cloth on which the

plaintiff was working sometimes was spoken of in the evidence as the "apron."

Other evidence is described in the opinion.

The jury took a view of the machine at the defendant's factory, and it was stated to them that it was in substantially the same condition as at the time of the accident. The jury saw the machine in operation and saw cloth put in and carried from one end to the other in the same manner that the plaintiff was doing it at the time of the accident.

At the close of the evidence the defendant asked the judge for ten rulings. The judge gave as instructions the second and third rulings requested, which were to the effect that the plaintiff was not entitled to recover upon either the first or the second count of his declaration. The other rulings requested were as follows:

"1. Upon all the evidence and pleadings, the plaintiff is not entitled to recover."

"4. Upon all the evidence the plaintiff is not entitled to recover upon the third count of his declaration.

"5. The court instructs the jury that it is common knowledge that clothing or any other flexible article or material on coming in contact with a revolving shaft is liable to get caught and wound around it, and if the jury find that the plaintiff, Cullalucca, by his own conduct in handling the apron allowed it to come in contact with the revolving shaft upon which he was caught, and as a consequence thereof he was injured, he cannot recover.

"6. If the jury find that the plaintiff, Cullalucca, by his conduct caused or contributed toward bringing the apron into contact with the revolving shaft, whether independently of, or in conjunction with, any action of the machine on which he was employed, he cannot recover.

"7. The court instructs the jury that it is common knowledge that a part of that apron, (five or six feet) such as is described in the evidence, could not be caused to fall away from the 'front roll' on the spreader by an increase in speed of the machine from the minimum speed to the maximum speed, as such speeds are shown from the evidence to be, in such manner as to land upon the steam pipes, having regard to the construction of the machine.

"8. The jury would be justified in finding upon the evidence in this case that the apron would be no more likely to fall a

distance from the 'front roll' upon the highest speed of the machine than it would upon the lowest speed.

"9. The court instructs the jury that upon the evidence in this case the change in the speed of the machine, if they find there was a change, was not the proximate cause of the plaintiff's injury, and he cannot recover on this ground.

"10. The court instructs the jury that the plaintiff, Cullalucca, when he entered the employ of the defendant, assumed all the obvious risks of the business, and that one of the obvious risks so assumed was that if the apron were allowed to come into contact with the revolving shaft upon which he, (the plaintiff) was hurt, the said apron might become wound around the shaft."

The judge refused to make any of these rulings, and submitted the case to the jury on the third count with other instructions, which included the following:

"The substantive question in this case which you have to get at is whether or not the employer fulfilled the obligation to furnish a reasonably safe machine and appliances with which to work. The obligation there is not to furnish perfect appliances, not to furnish those which are the finest in the art, but to furnish appliances such as the man accepts when he goes to work there, and to keep them in a reasonably safe and convenient condition for use."

"And so with regard to any condition of the shaft: Was the shaft defective? Does a fair preponderance of the evidence in this case show that the shaft, about which this apron was wound and upon which this young man was caught, was defective, that is to say, was in a condition which rendered that machine out of order for the performance of its ordinary duty, or which, not merely as a temporary matter, but in some substantial way, increased the ordinary dangers attendant upon running it? I think it would be my duty to instruct you that a mere burring of the head of a screw, if it did not have anything to do with the ordinary safety and the ordinary usefulness of the machine, would not be such a defect that there could be recovery for it in this case, if that is all there is in the case."

The jury returned a verdict for the plaintiff in the sum of $7,000; and the defendant alleged exceptions.

When the exceptions came on for argument, the defendant pre-

sented to this court a motion under St. 1913, c. 716, § 3, to be allowed to amend its answer by adding an allegation "that such injuries were received or sustained by the plaintiff in the ordinary course of his occupation, and were part of the obvious, natural and inherent risks assumed by said plaintiff in accepting, undertaking or continuing in such employment." The denial of this motion is dealt with in the opinion.

*E. I. Taylor,* for the defendant.

*J. G. Walsh,* for the plaintiff.

SHELDON, J. 1. The defendant, under the provisions of St. 1913, c. 716, § 3, has moved for leave to amend its answer by setting up the defense that the plaintiff had assumed the risk of the accident that happened to him. We are of opinion that upon the facts of this case any such assumption of the risk must have been a contractual assumption of the open and obvious risks involved in the employment, and must have been made when the plaintiff entered upon the employment. It was not such an assumption as was considered in *Leary* v. *William G. Webber Co.* 210 Mass. 68; *Flaherty* v. *New York Central & Hudson River Railroad,* 211 Mass. 570; *Lavartue* v. *Ely Lumber Co.* 213 Mass. 65, 66; and *Oswald* v. *Donohue,* 215 Mass. 574. Here the question bears directly upon the duty owed by the defendant to the plaintiff, and comes under the doctrine that an employer is not bound to change the conditions manifestly existing when a contract of employment is made. *Rivers* v. *Richards,* 213 Mass. 515, 519, and cases there cited. It follows that the amendment is needless, and the motion is denied.

2. Coming to the merits of the case, the first question is whether there was evidence that this accident was caused by the negligence of the defendant. The plaintiff contends that while he was carrying a roll of cloth in the usual and proper manner over the spreader from the front to the rear of the machine, the speed of the machine was suddenly increased, and that the result of this increase was to throw the cloth over the pipe upon the shaft, so that it became caught there and wound around the shaft, and drew with it his hand and arm, and caused him serious injury. That is, the point which he makes is that the accident was due to the sudden increase of speed, in the first instance. As to this increase of speed, he makes two contentions. In the first place,

he contends that the sudden and unexplained increase of speed in such a machine as this, while it is being operated in the usual and proper manner, comes under the same rule as the sudden and unexplained starting into motion from a position of rest of a machine which ought to remain still. In the latter case, it is now settled that such an occurrence, the sudden starting of a machine which ought to remain at rest, resulting in injury to one who has the right to suppose that it will remain still, comes under the rule of *res ipsa loquitur,* and if unexplained affords evidence not only that there is a defect in the machine, but also that there has been negligence on the part of the employer who supplies the machine. *Chiuccariello* v. *Campbell,* 210 Mass. 532, in which some of the earlier cases are collected. *Cook* v. *Newhall,* 213 Mass. 392, 394, 395. The failure of an effort to stop a machine by the proper use of the apparatus provided for that purpose was held in *Filosi* v. *Boston Woven Hose & Rubber Co.* 214 Mass. 408, to come under the same rule. But in our opinion that rule ought not to be extended to cover a case like the one now presented. The rule itself, as was pointed out in *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 193, was established because "the court would not be justified in saying that the jury might not find, as men of experience in common affairs of life, that such a machine does not ordinarily start automatically without some negligence of omission or commission on the part of the employer, and that the existence of such negligence is the rational explanation of the starting." But the case at bar in principle corresponds more nearly to *Ridge* v. *Boston Elevated Railway,* 213 Mass. 460, 462. This machine was operated by means of power transmitted to it through a system of shafting. Manifestly there were many influences which might vary or affect its speed, with more or less suddenness, and many of these influences would be wholly independent of any negligence on the part of the defendant. A change in the load put upon the main shaft by the stopping or starting of other machines to which power was transmitted from that shaft might at once cause a greater or smaller amount of power to be concentrated upon this machine and so accelerate or reduce its speed of operation. When it was first started, its speed naturally would increase until it had reached a maximum; and this increase might be, not regular or steady, but by a series

of jerks or impulses, as the power supplied from the central source might be increased or as the load put thereon might be diminished. If this is left uncertain, in other words, if a sudden increase of speed is left unexplained, it might be due either to negligence for which the employer would be answerable, to the mere negligence of a fellow servant, or to the natural operation of proper machinery for which no one would be liable. *Ragolsky* v. *Nurenberg*, 211 Mass. 575. We are of opinion that the plaintiff cannot base a recovery upon this ground.

He contends further that there was evidence that the increase of speed and his resultant injury were due to a defective condition of the machine, and that this defective condition arose from negligence of the defendant. The increase of speed, he affirms, was due to a defective clutch, which had worn loose so that, as the bearings grew hotter and tended to come together, there was an increase of friction between them, power thus was transmitted more freely, and the speed of the machine "jumped up." He contended also that the shaft by the side of the machine was not in a safe and proper condition for use on that kind of machine, because it had become "roughed up" in such a manner that something might catch on it and adhere to it and become twisted around it. That is, his contention is that the increase of speed was due to a defect in the apparatus provided by the defendant, that the effect of this speed naturally would be and actually was to throw the cloth forward and upon the shaft at the side of the machine; and that by reason of the roughened condition of the shaft the cloth was liable to be and actually was caught upon the shaft and drawn around it, carrying with it his hand and arm. There was also evidence that upon this shaft was a bearing fastened by a set screw, and that it was found afterwards that the slot in the head of this screw was "roughed up" at the sides, burred up slightly and more or less pointed. And the plaintiff contends that this was a defective condition, by reason whereof cloth thrown upon the shaft would be liable to be caught and drawn over the shaft, and that the jury might find that this was what did happen.

In support of these contentions the plaintiff relies mainly upon the testimony of one Forbes, called by the plaintiff as an expert witness. But on a careful examination of his testimony we cannot

say that it indicates any actionable negligence on the part of the defendant. He testified, among other things, that the increased speed of the machine, if there was slack in front of the rolls, would pull the cloth up rather than throw it, would push it right along, would pile up the cloth in great loops as it fell over, that it (the cloth) would fall away from the roll; that if a speed of one hundred and fifty revolutions per minute pushed the cloth a foot away, a speed of sixty revolutions per minute would push it the same distance; that the speed had not much to do, had practically nothing to do, with the way the cloth would fall. There is no need of recapitulating the other testimony bearing upon this question. Looking at it all, we find nothing which would warrant the inference that the increase of speed had anything to do with the occurrence of the accident. If any negligence of the defendant was responsible for the increase of speed, it was negligence which did no harm to the plaintiff and cannot be made the ground of recovery.

As to the claim that the cloth was thrown upon the shaft, and caught upon it by reason of its roughened condition, the evidence excludes the hypothesis. We find no evidence that the speed of the shaft was greater than from forty to fifty revolutions per minute. According to Forbes's testimony, the result of a speed of even sixty or one hundred and fifty revolutions per minute would be to push the cloth away from the machine only a foot. We find no evidence going further than this. But between the spreader roll and the steam pipes there was a space of eighteen or nineteen inches. Moreover, upon the testimony put in by the plaintiff he had gone, at the outside of the machine, to within six feet of its end. As the machine was eighteen feet long, he must have been about twelve feet from the spreader roll. If, as has been suggested, he was confused as to the ends of the machine, still his distance must have been six feet. There is no evidence that cloth could have been thrown such a distance, and it seems to us to be a physical impossibility.

The mere presence of the set screw upon the shaft, as the judge correctly said to the jury, was not material. It was a reasonable appliance, and the defendant owed to the plaintiff no duty to remove it. If however it had become so altered in its character, so roughened up by maltreatment or by misdirected efforts to

test it or to tighten it as to involve a danger of cloth catching upon it, that might be a different thing. But apart from what already has been said about the shaft, upon the plaintiff's own testimony and all the other evidence in the case, there is nothing to show that the cloth did become caught or entangled upon this screw. The plaintiff's testimony as to the place where his arm was caught, the mark which he put upon the photograph which was in evidence, on the opposite side of the hanger from the set screw, and all the other evidence, indicate that the portion of the shaft around which the cloth was alleged to have been wound was between the hanger and the drum. And here again it may be added that upon the measurements stated to us we cannot see how the cloth could by any possibility have been thrown upon the screw.

We are constrained to say that upon all the evidence the plaintiff did not make out a case, and that a verdict should have been ordered for the defendant as it requested. Its exceptions must be sustained, and judgment in its favor must be entered.

*So ordered.*