DENISE ROBICHAUD, administratrix, *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Middlesex. January 21, 1915. — February 25, 1915.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Negligence,* Railroad, In freight yard. *Evidence,* Of rules, Matter of conjecture. *Practice, Civil,* Exceptions.

In an action against a railroad corporation by the administrator of the estate of a flagman in a freight yard of the defendant, under St. 1909, c. 514, §§ 127 *et seq.,* for causing the death of the plaintiff's intestate, one of the plaintiff's witnesses testified, on his cross-examination by the defendant, that he had observed the intestate while he was performing the duties of a flagman; that the intestate appeared to be familiar with the rules of the company; that all the men were furnished with a book of rules; that he saw a book in the intestate's hands which was similar to the defendant's book of rules in respect to form, color and superscription, but that he did not see the book open. Thereafter the judge, against the plaintiff's objection, permitted the defendant to read to the jury from a book similar in appearance to the one seen in the intestate's hands certain rules which had an important bearing on the question of the intestate's due care. At the close of the evidence the judge ordered a verdict for the defendant and the plaintiff alleged exceptions. *Held,* that the evidence justified the judge's preliminary finding and ruling allowing the rules to be read to the jury; but that the defendant had no right to rely, in support of the ordering of the verdict, on any inference of the intestate's knowledge of the rules that were read to the jury; because, if the case had been left to the jury, it would have been within their province to say whether they would draw such an inference, and because they would have had the right to disbelieve the witness's statement that the intestate had a book of rules in his hands.

In an action against a railroad corporation by the administrator of the estate of a trainman in a freight yard of the defendant, under St. 1909, c. 514, §§ 127 *et seq.*, for causing the death of the plaintiff's intestate, it appeared that the intestate was a man of large experience in handling trains, who had worked in the same division of the freight yard in which he was killed for seven or eight years, that at the time of the accident he was at work somewhere upon or near fourteen cars that had been shunted upon a side track when nine more cars were sent down upon them by their own momentum, that their impact pushed the fourteen cars about five feet, and that thereafter the dead body of the intestate was found beneath the second of the fourteen cars counting from the end away from the nine cars that had come down. There was nothing to show where on the top of or between or under the fourteen cars the intestate was or what he was doing when the nine cars came in contact with the fourteen cars. *Held,* that a verdict must be ordered for the defendant, because it was a matter of conjecture whether the intestate at the time he was killed was engaged in the performance of his duties and was in the exercise of due care.

PIERCE, J. This is an action of tort brought on October 10, 1910, under the employers' liability act, St. 1909, c. 514, §§ 127 *et seq.*

At the close of the plaintiff's case the defendant rested, and the judge at its request directed the jury to find a verdict for the defendant.

A witness for the plaintiff, one Brown, testified on cross-examination that he had observed the intestate while he was performing the duties of flagman; that he appeared to be familiar with the rules of the company; that all the men were furnished with a book of rules; that he saw a book in the intestate's hands, and that it was similar to the books of rules of the defendant in respect to form, color and superscription, but he did not see the book open.

The judge against the objection of the plaintiff permitted the defendant to read to the jury, from a book in appearance similar to the one seen in the intestate's hands, rules numbered 777 and 835, each a rule of importance in the determination of the intestate's due care.

The above facts justified the judge's preliminary ruling and submission to the jury, but whether the intestate had or had not knowledge of the specific rules as read remained for the jury's determination. They might or might not infer such knowledge; indeed they might disbelieve the statement of the witness that the intestate appeared to have knowledge of the rules, or had in his hands a book of rules. It follows that rules 777 and 835 should be

disregarded in considering whether the judge was right in directing a verdict for the defendant.

The intestate was a man of large experience in railroading. He had worked in this division and in this yard, at Mansfield, for seven or eight years. He had been a flagman on this nightly "run" for three months. At times he had been an emergency conductor and had taken trains in and out of the Mansfield yard.

On the night of the intestate's death a freight train of twenty-four cars had come from East Providence to Mansfield. It arrived somewhere between three and four o'clock in the morning. It backed from the main track, over side track No. 3, to side track No. 5, leaving there the caboose and three cars. The conductor himself "cut" the caboose and three cars, and notified the intestate that they could pick up the cars on track 5; then the intestate rode the three cars to their destination on the extension of track 3, and on arriving there gave the conductor the signal that all was right, that is to say, their position would not interfere with any movement on the other track. The engine then pulled the remaining twenty cars back upon track 3, and stood there.

The conductor meanwhile went to the office to get his way bills and to ascertain what cars he was to take out. At the time of the accident fourteen cars already had been placed on track 5. The yard brakeman brought to track 5 from track 7 nine cars, pulled the pin on the car next to the engine, the engine gave a little push, and the cars ran by their own momentum on a grade down on those already there. Their impact pushed the cars about five feet.

The yard brakeman rode the cars. He stood on the first one coming down, which was a flat coal car. He had a lantern on the footboard on the outside of the car, and the lantern was visible to any one down the track. He saw nobody and did not know of the intestate's being on top, between or under the cars.

The intestate was found, dead, beneath the second car of the fourteen cars farthest away from the cars as they came down. No one saw him from the time the conductor left him on track 3 until he was found.

There is no testimony in the record to show where the intestate was at the time of the contact of the nine cars with the fourteen cars. It reasonably may be argued that his injury was due to the force of the impact, but it is at least doubtful if it be proven.

There is no testimony to show where he was at the time of the accident other than that he was in a position to fall or be dragged beneath the cars.   He might have been setting or unsetting the brake on the top of the car.   He might have been on top of the car for some other purpose and have fallen between the cars.   He might have been under or between the cars.

It is argued that at the moment of the coming together of the cars he was engaged in coupling the air hose.   It appears that the trainmen of the train which was to take out the assembled cars had no part in its making up.   As soon as the train was fully made up, that is, as soon as all the cars were collected on one track and the engine was attached, perhaps sometimes before the engine actually was connected, it was the duty of the trainmen to couple the air hose between the several cars.   There was no evidence that it was the practice to air-couple the cars before all were assembled.   It is not reasonable to believe that a trainman, with the knowledge and experience of the intestate, was occupied in air-coupling cars while the yard men were engaged in making up the train; or to believe that he thought the fourteen cars were all the cars which were to constitute the train.

Whether the intestate was engaged in the performance of his duties or was in the exercise of due care is a matter of conjecture and speculation.   *Cox* v. *South Shore & Boston Street Railway*, 182 Mass. 497.

*Exceptions overruled.*

*J. F. Cavanagh,* for the plaintiff.

*J. L. Hall,* for the defendant, was not called upon.