CATHERINE SHEA, administratrix, *vs.* AMERICAN HIDE AND
LEATHER COMPANY.

Middlesex.     March 16, 17, 1915. — May 21, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Negligence,* Employer's liability.     *Statute,* Construction.

At the trial of an action by an administrator under St. 1909, c. 514, §§ 127, 128, and
at common law for negligently causing the suffering and death of the plaintiff's
intestate when in the defendant's employ before the workmen's compensation
act took effect, where there is evidence that the intestate was set at work by
the defendant's superintendent upon a drum-setting machine used for smoothing
and straightening rough leather, that the machine was defective and was known
to the superintendent to be so, and that the superintendent gave the intestate
no warning or information in regard to the defects, that the defective condition
of the machine was not apparent when the intestate went to work and did not
disclose itself until the fourth working day of his employment, when the cylinder
flew out and struck the intestate on the head and chest, throwing him on his
back and causing his suffering and death, the plaintiff is entitled to go to the
jury and it is right for the presiding judge to refuse to order a verdict for the
defendant.

At the trial of the action above described it was error, at least as applying to the
common law counts of the declaration, for the presiding judge to refuse a request
of the defendant to rule that the defendant owed the plaintiff's intestate no
duty to change or improve the condition of the machine on which the intestate
was set at work and that the defendant's only duty to him was to warn him in
regard to any dangers in connection with the use of the machine that were not
obvious.

St. 1909, c. 363, § 1, which provides that "If a defect in the ways, works or ma-
chinery of a person, partnership or corporation, has been reported to the person
whose duty it is to remedy said defect, or cause it to be remedied, or to report its
existence, and such defect is not remedied within a reasonable time, and by rea-
son of said defect an employee is injured, such employees shall not be held to
have assumed the risk of such injury," is not to be interpreted to apply to a
case where the report of the defect to the employer was made before the in-
jured workman was employed.

*It seems* that, to bring a case within the statute quoted above, the report of the
defect must have been made by the injured employee himself or in some way in
his behalf.

PIERCE, J.     This was an action of tort brought by Catherine
Shea of Woburn, as the administratrix of the estate of the late
Edmund Shea of Woburn, for the conscious suffering and death of
the plaintiff's intestate owing to the alleged negligence of the de-

fendant on April 29, 1912. It was brought under Sts. 1909, c. 514, §§ 127, 128; two counts under clause 1 and clause 2 respectively of § 127 being for the injury and conscious suffering, and two counts under clause 1 and clause 2 of that section being for the death after conscious suffering. There also were joined in the same action three counts at common law for the conscious suffering. All exceptions to the admission of evidence other than the first taken are waived in the defendant's brief.

It is now conceded that the testimony objected to in the first exception was admissible in so far as it tended to show what the condition of the machine was at the time the intestate entered the defendant's employ. As the testimony was properly admissible for a limited purpose, and as the exception when taken was a general one, it follows upon familiar principles that the exception must be overruled.

At the conclusion of the plaintiff's evidence the defendant offered no evidence, but asked the judge to order a verdict for the defendant, which the judge * refused to do, and the defendant excepted.

The motion for the ordering of a verdict is analogous to an oral demurrer to evidence. *Murphy* v. *Russell,* 202 Mass. 480. The mover admits the truth of all facts which the jury might find in favor of the plaintiff, whatever the nature of the evidence. He admits that if the evidence conflicts, that of the plaintiff is true so far as it conflicts with his own. *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314. *Cohen* v. *Henry Siegel Co.* 220 Mass. 215. He admits that if the plaintiff calls several witnesses to prove the same transaction, some of whom testify unfavorably to him and others in his favor, the latter have told the truth. See Troubat & Haly's Practice (3d ed.) 509 as quoted in Tidd's Practice (4th Am. ed.) 865, note; *Copeland* v. *New England Ins. Co.* 22 Pick. 135; *Forsyth* v. *Hooper,* 11 Allen, 419; *Bothwell* v. *Boston Elevated Railway,* 215 Mass. 467, 475. The presiding judge also will make any inference of fact in favor of the party offering the evidence which the evidence warrants and which the jury, with the least degree of propriety, might have inferred. See cases cited above.

---

* *Morton,* J. The jury returned a verdict for the plaintiff in the sum of $5,000, apportioned $1,000 for conscious suffering and $4,000 for the death.

Applying the foregoing principles as rules of guidance in the determination of fact, it admittedly appears, or may be inferred, that the machine upon which the intestate was set at work was known as a drum-setting machine; that its function was to smooth and straighten rough leather; that its essential operative features consisted of a drum and cylinder driven by means of connecting pulleys and gears; that the cylinder occupied a place in a frame above and contiguous to the drum; that the cylinder was of cast iron, eight feet and eight and one half inches long, and weighed six hundred pounds; that a steel shaft ran through the centre of the cylinder and fly wheel pulleys were attached to its ends; that the shaft served as an axle, its journals and ends turning in babbitt metal lined boxes; that these two boxes were supported or hung on pivot points or box swivels; that they were movable or removable to permit of alignment with the axle journals of the cylinder; that when the cylinder was in position and the journal bearings and boxes in alignment the boxes were or should be securely held in fixed position by set screws; that the boxes were made in halves, in such form that their inner lined babbitt metal surfaces when the halves were joined, came nearly in contact with the circumference line of the enclosed and supported axle journal; that the upper half of the boxes or caps was fastened to the lower half by four cap screws; that the purpose of the boxes was to support the shaft or axle as it turned within them, and that of the cap, to prevent the cylinder's flying out as it revolved; that with boxes properly made, properly babbitted, properly placed, properly aligned and securely fastened to the frame of the machine, the cylinder could not fly out if the cap screws held the cap firmly in position; that without heating the bearings of the shaft fixity and immovability of the caps was a practical thing to attain by placing between the edges of the halves of the boxes a thin strip of leather or metal before the final tightening of the cap screws.

When the machine was not running the boxes and screws were visible to the workman as he stood at his place in front of the machine. When the machine was in operation a hood or bonnet came down over the front of the cylinder, to protect the workman from flying oil and filthy dirt, and so positioned hid from view the journal boxes. The maximum of safety, if the cylinder were properly balanced, was sixteen hundred revolutions a minute.

There was ample evidence, indeed it is hardly disputed, that the journal boxes, particularly the box on the right hand side of the machine, had given great trouble and were the cause of serious anxiety and apprehension of harm to the changing operatives for more than a year preceding the accident which caused the intestate's death. The set screws which held the boxes in position frequently came out and fell to the floor. The cap screws loosened, and the axle, thus partially released from the restraint of the cap, rattled, quivered and vibrated. The vibration served in turn further to loosen the boxes, and the entire machine was unstable.

There were several causes for the loosening of the screws and cap: (1) the boxes as metal babbitted were unfit; (2) they were not properly babbitted and adjusted, the one half to the other; and (3) the cylinder was too long for the frame and as it revolved it pushed against the box cap.

When the machine was running and the noise of the shaft's vibration and rattling told the workman standing in his place at the front of the machine that the cap screws had become loose, the machine was stopped, the screws tightened, and then again set in motion. When the machine was at rest there was no visible sign to indicate that it was out of repair, unfit for the work it was to do, or dangerous to operate. Specifically the only way to learn of the loosened screws was through experience, touch or instruction.

On the day before the hiring of the intestate the operator refused to work longer upon the machine because of his belief in the danger from it. The superintendent endeavored to persuade the operator to resume work, but failing so to do he (the superintendent) sent for the intestate, who was out of employment and a man of experience in the working of leather-setting machines. The intestate came to work on the machine on Thursday, April 25, 1912, and was killed on Monday, April 29, 1912, by the cylinder flying out and striking him on the head and chest.

There was no evidence that any defect in the machine, or in any of its parts, or any unusual danger attendant upon its use, was pointed out or disclosed to him previously to or coincidentally with his hiring, or that he knew of such. There was evidence from which it may be inferred that the operator who last used it cleaned it before leaving it, and so far as he was able adjusted its parts and tightened all screws. There was, then, at the time of employ-

ment no obvious danger.  There was no evidence that during the three days of the intestate's work in connection with the machine the screws came out, or that any other defect was observed by the intestate or any one else.

On April 29, 1912, the intestate went to work at about a quarter before seven o'clock.  He put on his apron, put a piece of leather upon the drum, and started the machine.  The machine ran a few minutes; then the cylinder flew out, struck the intestate on the head and chest, and threw him upon his back.  When found he lay with his feet toward the machine and the cylinder across his chest.

The defendant and its superintendent knew directly and inferentially, from the complaints of the workmen before the intestate's hiring, of the condition of the journal boxes of the machine, and refused or neglected to remedy the indicated defects.  So far at least as the defendant's duty and the intestate's rights were concerned the defendant must be held to have known of the risk attending the use of such a machine, and as the defects were not known to the intestate or obvious to him or apparent to the senses of ordinary intelligent persons or the consequences and injury likely to follow from the defects perceivable to persons of ordinary intelligence and perception, it also must be held that the defendant failed in its common law and statutory duty to furnish the intestate with reasonably safe and suitable machinery and appliances.

The evidence would justify a finding that the superintendent had full knowledge of the defects and of the risks attending the use of the machine before and at the time of the hiring of the intestate, and also as well had knowledge of the intestate's ignorance thereof; and that he neglected to warn the intestate.  *Lavartue* v. *Ely Lumber Co.* 213 Mass. 65.  There was no evidence to show that the machine's defective condition became known to the intestate after his employment, or that knowing of it he appreciated the danger of injury to himself likely to flow therefrom.

The evidence would justify a finding that at the time of the accident the intestate was engaged in the performance of his contractual duty, and that no negligent act of his contributed to his injury.  *Maguire* v. *Fitchburg Railroad,* 146 Mass. 379.  *Prince* v. *Lowell Electric Light Corp.* 201 Mass. 276.

The presiding judge was clearly right in submitting the evidence

to the jury and in refusing to rule that upon the evidence the plaintiff was not entitled to recover on counts 1, 2, 3, 4, 5, 6, 7, or any of them.

The ninth and tenth rulings requested by the defendant were as follows: "9. Whatever the jury may believe from the testimony of the plaintiff's witnesses that the condition of the leather or drum-setting machine was on the day that the plaintiff's intestate went to work for the defendant, the defendant owed the plaintiff no duty to change or to improve that condition of the machine; the plaintiff's intestate took the machine as it was at that time, whether good, bad, or indifferent, and the only duty which the defendant owed to the plaintiff's intestate was to warn him of any dangers in connection with the use of that machine which were not obvious.

"10. When the defendant hired the plaintiff's intestate to work on the leather or drum-setting machine, it was under no obligation to make the machine a better one or to change it in any other way. The plaintiff's intestate took it as it was. It was only in case there was some risk in connection with the use of the machine which was not obvious that any duty was thrown on the defendant, and the duty thrown upon him in such a case was to give a warning."

These requests were applicable at least to the common law counts.

The presiding judge in giving his charge forgot or overlooked either that there were in the declaration common law counts, or that there is a well established distinction between the contractual assumption of risk to which the requests for rulings manifestly were directed and that assumption of risk which, founded upon known and appreciated conditions, is nevertheless voluntarily and knowingly assumed. *Cullalucca* v. *Plymouth Rubber Co.* 217 Mass. 392. Whatever the cause, the judge in his charge ignored the subject matter of these requests.

The defendant was entitled to have the rulings given as instructions to the jury, at least in substance, and the refusal to give them was error. *Rivers* v. *Richards*, 213 Mass. 515, 519. The remaining requests for rulings were fully and adequately treated in the charge, and there is no just ground for complaint.

The presiding judge, at the request of the plaintiff, upon the

question of the assumption of risk charged the jury as follows: "Edmund Shea, the intestate, cannot be held to have assumed the risk of a defective condition if that defect had been reported to the person whose duty it was to remedy it or cause it to be remedied and repaired; it is negligence if said defendant did not remedy it within a reasonable time. In other words, that instruction requires you in effect, if you find that this alleged defect was reported to some one whose duty it was to remedy it, if that is the fact, and you find that to be the fact, then assumption of risk does not apply to Shea."

There was evidence that upon several occasions considerably before the time of the employment of the intestate, two at least of the employees, while their work was upon the machine, had reported to the superintendent the existence of the specific defects in the machine which were alleged to be the cause of the intestate's injury and death, and that more than a reasonable time had elapsed before the intestate's employment within which the defects might have been remedied.

This ruling evidently was based upon an interpretation of the meaning to be given to the St. of 1909, c. 363, § 1,* which, in its literal terms, is sufficiently comprehensive to include the facts of the case at bar. Such an interpretation would include a complaint of a defective machine made years before the employment of any employee, with the result that no employee thereafter assumed the risk of a known or obvious defect. The reason for the enactment of the statute is well known, and the wrong thought to exist in the law is remedied by limiting its application to the person making the complaint, or at the most to persons or classes of persons on whose behalf the complaint was in fact made. We think that the statute should be so interpreted.

It follows that the charge in its interpretation of the statute was too broad, and the exception must be sustained.

The exceptions to the refusal to give the ninth and tenth requests

---

* That statute is as follows: "If a defect in the ways, works or machinery of a person, partnership or corporation has been reported to the person whose duty it is to remedy said defect, or cause it to be remedied, or to report its existence, and such defect is not remedied within a reasonable time, and by reason of said defect an employee is injured, such employees shall not be held to have assumed the risk of such injury."

and to so much of the charge as related to St. 1909, c. 363, § 1, are sustained; all other exceptions are overruled.

*Exceptions sustained.*

*E. C. Stone,* for the defendant.

*E. J. Fegan, (D. DeC. Donovan* with him,) for the plaintiff.