JEAN B. METAYER *vs.* J. WILLIAM GRANT & another.

Bristol.    October 25, 1915. — November 23, 1915.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence,* Employer's liability.

In an action by a carpenter for injuries sustained, before St. 1911, c. 751, Part I, § 1, took effect, when he was in the employ of the defendants, who were contractors and builders, it appeared that the plaintiff had been set at work on the second floor of a small unfinished house to receive window frames as they were passed from the first to the second floor through a hole eight feet long and four feet wide that had been left for a stairway, that, while he was bending forward to take a frame that was being passed up through the stair hole to him, he touched with his knee a timber brace that ought to have been nailed in place and was not, whereupon it fell and caused him to fall through the stair hole, that the brace had been placed in its position by order of the foreman, who was a fellow workman of the plaintiff, and that a cleat which held the brace insecurely in place had been nailed by another fellow servant of the plaintiff, who testified that he nailed it in the way he did "because he didn't know any better;" and it did not appear that the defendants had any actual knowledge of the condition of the brace. *Held,* that a verdict properly was ordered for the defendants.

PIERCE, J.    The plaintiff, while in the employ of the defendants, because of the fall of an insecure, unsafe and unstable piece of small timber, tumbled into and down a stair hole and was injured on October 1, 1910.

At the close of the evidence the presiding judge * at the request of the defendants ruled that the plaintiff could not recover on either the first or second counts of his declaration; and it is now agreed that such ruling shall have the effect of a verdict ordered for the defendants.

To justify the ordering of a verdict for the defendants, under the rule recognized and followed in *Lindenbaum* v. *New York, New Haven, & Hartford Railroad,* 197 Mass. 314, *Cohen* v. *Henry Siegel Co.* 220 Mass. 215, *Robichaud* v. *New York, New Haven, & Hartford Railroad,* 220 Mass. 250, and *Shea* v. *American Hide & Leather Co.* 221 Mass. 282, we must assume that the presiding judge disregarded any unfavorable testimony of the defendants

---

* *McLaughlin,* J.    The plaintiff alleged exceptions.

and of the witnesses and accepted the testimony of the plaintiff and of his witnesses only so far as such testimony established or tended to prove the allegation of a breach of duty of the kind described and set out in the two counts of the declaration. So considered the testimony warranted the finding of the following facts and inferences of fact.

The plaintiff, a carpenter with an experience of six years, entered the employment of the defendants, who were general contractors and builders, four months before the accident. At the time of his injury the defendants employed with the plaintiff five carpenters, one of whom was a boss or foreman. The defendants were causing to be erected for themselves a cottage house. The plaintiff began work thereon a week or more before the accident, just after the laying of the flooring of the first floor and the erection of two of the corner posts. Thereafter the plaintiff assisted generally, specifically helping to erect posts, laying the rafters and beams and a part of the second story flooring. He also worked on the first and second floors in the erection of partitions, and in the placing and nailing of outside braces, but did not work upon the inside braces, or about them until shortly before the accident. He knew that it was the custom of carpenters to nail inside braces, but did not know or seek to know whether the inside braces on the second floor were nailed or spiked. The inside braces were designed to straighten the building by pressure exerted upon the partition walls and to support the walls in the position attained until the walls were made fast and immovable by the laying of the floors.

The brace which caused the injury consisted of a two by three piece of timber, twelve feet long, weighing about thirty pounds, used in combination with a cleat of wood nailed or spiked to the floor. A "crow foot" cut in one end of the timber was placed against the partition cap, and the other end rested upon the floor in such position relative to the cleat that as the timber was pushed or forced into contact with the cleat a wedge was formed. During the transmission of force the cleat served as a fulcrum and afterward remained a frictional stop to any change in the position of the timber. Security against the fall of the timber was in exact proportion to the amount of friction created and maintained by the contact of the cleat with the timber.

Shortly before his injury the plaintiff was set at work on the second floor to receive window frames as they were passed by a fellow workman from the first to the second floor through a stair hole eight feet long by four feet wide. As the plaintiff went up the ladder in the stair hole to go to his work on the second floor he passed by and saw that the cleat which held the timber "slanted toward the hole." The brace was within eight or ten inches of the hole, and as the plaintiff stood to receive the frames was between him and the hole.

The plaintiff made no particular examination of the brace, assuming that the timber was nailed in the manner such timbers customarily are fastened. While at work, bending forward to take a frame then being passed up through the stair hole to him, he touched the timber with his knee. It fell and he tumbled into the hole in the endeavor to save himself from its fall.

It was admitted "that if the cleat was slanting the way the plaintiff claimed it was the brace would probably fall if a man leaned against it and the lower end would have to go out toward the hole."

There was also testimony of the defendants' foreman, called by the defendants, that the way the cleat was placed near the hole, as testified to by the plaintiff, was "an improper and unsuitable way."

Manifestly this condition of the brace was a menace to all persons coming near to it in ignorance of its condition.

The question is, was the negligence which was the cause of the dangerous position of the timber that of the defendants or that of a fellow servant?

The obligation of a master to furnish a reasonably safe place to work does not comprehend the negligent acts of fellow servants by reason of which the place is rendered unsafe and dangerous. *Armour* v. *Hahn,* 111 U. S. 313. The brace was placed in its position relative to the hole by the order of the foreman, a fellow servant; the cleat was nailed in the way it was by a fellow servant, without direction, who testified that he did so "because he did n't know any better." It does not appear that the defendants had actual knowledge of the condition of the brace, nor is such knowledge to be imputed because the defendants, in the exercise of a general supervision over the work of their employees, were in and

about the building a number of times each day. The building was a small structure and work upon it and within it was normally without peril of hidden danger.

There was no reason therefore why the defendant should not leave the details of such work to be carried out under the supervision of a subordinate, nor was there anything in the work that required watchfulness and care to see that no dangers arising from the neglect or ignorance of one servant confronted another. The duty to warn is measured by the ignorance of the employee.

The failure to fasten the timber with nails, in the absence of the defendants' direction so to do, was the neglect of a fellow servant and not that of the defendants, whatever may have been the theory of the defendants as to the necessity or propriety of so doing. It follows that the action of the presiding judge was right, and that the entry must be

*Exceptions overruled.*

*J. W. Cummings,* (*C. R. Cummings & J. W. Nugent* with him,) for the plaintiff.

*E. I. Taylor,* for the defendants.