EDGAR REED *vs.* EDISON ELECTRIC ILLUMINATING COMPANY
OF BOSTON.

MARY T. REED *vs.* SAME.

RUTH A. WAITE *vs.* SAME.

Worcester.   October 2, 1916. — November 27, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Practice, Civil,* Exceptions. *Negligence,* Motor vehicle. *Motor Vehicle. Proximate Cause. Way,* Public. *Nuisance. Electric Lighting Company.. Evidence,* Opinion: experts.

In passing upon an exception to the ordering of a verdict for a defendant and in determining whether the plaintiff had a right to go to the jury, this court, in accordance with the rule previously recognized and followed, disregarded all evidence and inferences unfavorable to the plaintiff's case.

In an action against an electric lighting company by the owner of a motor car for damage to the car caused by coming in collision with a pole of the defendant lawfully erected within the limits of a highway, there was evidence on which it could be found that the defendant, having erected, under a permit to use the highway for that purpose, a new pole for the support of its wires in a grass plot at the side of the travelled way and within the limits of a State highway in a town, had removed the old pole, which was twenty-four feet long, and had left it lying on the ground between the travelled way and the new pole with its end extending two feet and two inches into the travelled way, that the plaintiff's motor car, driven by the plaintiff's servant, in approaching this place, skidded, and that before the driver could get it on its course its wheels came against the recumbent pole and, guided by that pole, the car ran straight to and against the new upright pole, causing the damage, and that before the wheels of the car came against the recumbent pole the position of that pole had not changed during the ten days that it had lain on the ground. *Held,* that the plaintiff was entitled to go to the jury. ·

A license or permit granted by the proper authorities to- an electric lighting company to use a public way for the purpose of erecting a new pole and removing an old one does not authorize or excuse such use for an unreasonable time or in such a manner as unnecessarily to obstruct or endanger public travel.

In the case above described it was *said* that it was not necessary to determine, whether, if the pole at the time the plaintiff's car came in contact with it did not extend into or near the travelled way and was lying on the grass plot at the side of the road parallel to and not more than two feet distant from a stone wall that bounded the grass plot, as testified to by witnesses of the defendant, it would have been a nuisance in the highway.

In the same case it was *held* that it was error to allow an expert witness for the de-

fendant to testify, against the plaintiff's objection, that in his judgment it was not safe and proper to operate such a heavy motor car without chains over a State highway "that was slushy and icy and having some bare spots and wet places," this being a question of fact for the jury and not a subject for expert opinion.

THREE ACTIONS OF TORT, the first by the owner of a motor car for damage to it and for expenses incurred for medical attendance upon and nursing of his wife, and the second and third actions respectively by the wife of the plaintiff in the first case and by a friend of such wife for personal injuries sustained by them when travelling in the motor car driven by a servant of the plaintiff in the first case, all incurred on January 10, 1913, and alleged to have been caused by a recumbent disused pole of the defendant improperly and negligently placed and allowed to remain on Central Avenue, a public highway in the town of Weston. Writs dated January 10, 1914.

In the Superior Court the cases were tried together before *Hamilton,* J. The facts in regard to the happening of the accident which could have been found upon the evidence are stated in the opinion.

During the trial David L. Gallup, a professor of the Worcester Polytechnic Institute, was called by the defendant as a motor car expert, and was asked by the defendant the following question: "Whether or not in your judgment it was not safe and proper to operate a limousine car of the weight of the car in this case, with the extra load of gas tank and tires and four passengers, over a State highway of smooth macadam, that was slushy and icy and having some bare spots and wet places, without chains?" The plaintiff objected, and the judge admitted the evidence. The plaintiff excepted. The witness answered that in his judgment it was not safe and proper.

At the close of the evidence, upon motion of the defendant, the judge ordered a verdict for the defendant in each of the three cases; and the plaintiffs alleged exceptions.

*J. Clark, Jr.,* (*E. H. Vaughan* with him,) for the plaintiffs.

*C. C. Milton,* (*F. L. Riley* with him,) for the defendant.

PIERCE, J. Disregarding all evidence, including inferences of fact, unfavorable to the contentions of the plaintiffs as set out in their several declarations, under the rule recognized and followed

in *Metayer* v. *Grant,* 222 Mass. 254, and cases cited therein, the remaining testimony warranted the jury in finding that the plaintiffs while travelling in an automobile on the State highway, known as Central Avenue, in the town of Weston, suffered damage by reason of the collision of the automobile with an electric light pole of the defendant, lawfully standing within the limits of the highway.

Upon the evidence a jury might find the surrounding conditions at the scene of the accident to have been as follows:  The State highway runs westerly from the town of Weston.  It includes within the limits of its location the stone walls on the north and south sides.  Between the walls the surface of the way was nearly level and was usable for travellers with teams or automobiles with the exception of the space covered by a sidewalk on the north side of the location and that occupied by trees and an electric light pole on the south side, the trees and pole standing respectively twelve or fifteen inches and four and one half feet from the face of the north side of the stone wall.  The highway as located was three rods wide;  on the north side the sidewalk was somewhat above the surface level of the way;  then there was a space three and one half feet wide of rough macadam;  then one of eighteen feet of smooth macadam;  then one of three and one half feet of rough macadam;  then a grass plot eight to ten feet wide extending to the south wall.  On the road bed and sides of the way there were snow and slush in spots protected by the trees, but the tracks in the centre of the way were free and wheels ran upon the macadam.

The tread of the automobile was fifty-six inches.  The space of smooth and rough macadam outside the wheel tracks was ten feet and two inches on each side.  A pole that had been used as an electric light pole was lying on the ground between the southerly wheel track and an electric light pole.  It had been removed by the defendant to give place to the standing electric light pole ten days before the collision.  It was twenty-four feet in length and extended from within a few feet of the upright pole to a point ten feet southerly of the south wheel track, which point was two inches to the north of the south line of the rough macadam.  At a point east of and distant from the standing electric light pole sixty to seventy feet, the car skidded to the left of the travelled

macadam way; the driver turned his front wheels to the left "to catch the skid;" he caught it, then he turned back to the centre of the way; he pulled on his steering wheel — could not get back — he had run up against the pole on the ground which held the left wheel, and the car, so guided, ran straight to and against the upright electric pole.

There was also testimony to justify a finding that the pressure of the wheels of the car against the butt of the prostrate pole caused the tip of that pole to swing two feet to the north, and that the tip, before the position of the pole was changed by contact with the automobile wheel, was two feet and two inches on the travelled macadam way. Upon the evidence the jury also might find that the position of the pole had not changed during the ten days it was on the ground, that its presence was not necessary or helpful to the prosecution of any remaining work of the defendant, that it was an obstruction and menace to travel, and made the travelled way unsafe and dangerous. A license or permit to use the way for the purpose of erecting and removing poles by the side of the way does not authorize or excuse such use for an unreasonable time or for a purpose that interferes with, obstructs or endangers unnecessarily the rights of others. *Sawyer* v. *Davis,* 136 Mass. 239, 242, and cases cited. *Dolan* v. *Charles J. Jacobs Co.* 221 Mass. 256. The pole, in the position in which the jury could have found it to have been, was a public nuisance, unless the fact of its being there was justified by evidence which the record does not disclose. *Bemis* v. *Temple,* 162 Mass. 342. *Horr* v. *New York, New Haven, & Hartford Railroad,* 193 Mass. 100. *Commonwealth* v. *Morrison,* 197 Mass. 199. *Stoliker* v. *Boston,* 204 Mass. 522. *Igo* v. *Cambridge,* 208 Mass. 571. *Dolan* v. *Charles J. Jacobs Co. supra.*

We are of opinion that the jury rightfully might find that the collision with the upright pole was a consequence of the contact of the left wheel of the automobile with the pole lying on the ground in the position which the jury might have found it to have been on the testimony of the witness for the plaintiff, and that the consequent damage was sufficient to found an action against the defendant. *Leahy* v. *Standard Oil Co. of New York,* 224 Mass. 352, 361, 362. *Rapier* v. *London Tramways Co.* [1893] 2 Ch. 588, 599. Salmond, Torts, 199.

We do not think it necessary to determine whether the pole was a nuisance in the highway if, at the time the automobile came in contact with it, it was lying in the grass parallel to and eighteen inches or two feet from the southerly wall, as might have been found to be the fact on the testimony of the witnesses of the defendant.

Whether it was or was not "safe and proper" to operate the car under the conditions existing at the time, was a question of fact for the jury and not of expert opinion, and the answer of the witness Gallup should not have been received. We find no other reversible error in the admission or rejection of testimony.

The case should have been submitted to the jury.

*Exceptions sustained.*