HARRIET MARSAL *vs.* T. FRANK HICKEY.
HERBERT A. HASKELL *vs.* SAME.

Worcester.    October 2, 1916. — November 27, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Agency*, Existence of relation, Ratification.   *Motor Vehicle.*

If the owner of a motor car, who employs a chauffeur by the day to drive it and pays him weekly, lends his car to the chauffeur for a purpose in which the owner has no interest, the chauffeur is not the servant of the owner while operating the car so borrowed, although the owner pays for the gasoline used and for other expenses of operation.

If a chauffeur, who is employed by the owner of a motor car to drive it in the day time, dines with such owner on a certain evening and after dinner, with the permission of the owner, he uses the car to take to drive some friends of his own, who were possible friends also of the owner, the owner knowing that he was to take them, and if while thus driving a collision occurs with a buggy on the highway, and the owner pays for repairing the damage done to his car by the collision, these facts do not warrant a finding that the chauffeur was acting as the servant of the owner at the time of the collision, nor do they warrant a finding that the owner by paying for the repairs necessary to be made upon his own car adopted or ratified the acts of the chauffeur that made the repairs necessary.

TWO ACTIONS OF TORT, the first for personal injuries, and the second for the death of a horse and damage to a buggy and harness, all alleged to have been sustained on the evening of August 1, 1914, when Harriet Marsal, the plaintiff in the first case, was seated by the side of plaintiff in the second case in a buggy in which that plaintiff was driving on Harrington Street in Shrewsbury and they were run into by a motor car owned by the defendant and operated by one Haas, who was alleged to have been the defendant's servant or agent. Writs dated September 11, 1914.

In the Superior Court the cases were tried together before *Dana,* J. The plaintiffs called as witnesses the defendant and Haas. At the close of the plaintiffs' evidence, upon the defendant's motion, the judge ordered a verdict for the defendant in each of the cases, and reported the cases for determination by this court upon the agreement of the parties that, if the order of the judge directing verdicts for the defendant was right upon the legally admissible evidence reported, judgment was to be entered for the defendant in each case. If the order of the judge was wrong, judgment was to be entered for the plaintiff Marsal in the sum of $400 and for the plaintiff Haskell in the sum of $100.

The cases were submitted on briefs.

*F. B. Hall & J. H. Mathews,* for the plaintiffs.

*T. H. Gage, F. F. Dresser & C. A. Hamilton,* for the defendant.

PIERCE, J. These are actions of tort to recover damages, in the case of Harriet Marsal for personal injuries and in the case of Herbert A. Haskell for loss of property, arising out of a collision between a buggy in which the plaintiffs were driving and an automobile driven by Bruno P. Haas, who was returning from a picnic with a party of his friends, about 10 P. M. Saturday, August 1, 1914.

There can be no doubt that upon the evidence the questions of the plaintiffs' due care and the negligence of Haas were for the jury. The only question is whether at the time of the accident there was any evidence for the jury's consideration that Haas was the servant of the defendant acting within the scope of his employment; and the burden of showing that he was rested on the plaintiffs.

Upon this question the plaintiffs called as their only witnesses the defendant and Haas, whose testimony tended to show that the automobile was owned by the defendant and was duly licensed and registered in the name of the defendant; that Haas had a chauffeur's license and that at the time of the accident he was the defendant's chauffeur; that he lived with his father and mother but some nights slept at the house of the defendant; that he was paid by the hour and worked from seven o'clock in the morning until six o'clock at night; that he was employed by the day and paid weekly, which had been the custom existing between the defendant and Haas for several weeks or months before the

accident; that the defendant had been interested for two or three years as a financial backer of the Shrewsbury baseball team, and that when the team did not have any money to pay its bills he generally paid them; that he knew the ball team was playing on the day of the accident, that Haas played first base and out-field, and that he had played with the team most of the games that year and the year before; that when the defendant went to the ball games he generally used his automobile himself; that he let Haas use the automobile at any time he asked for it, and that at such time Haas·would get the key to the garage and unlock it himself; that when Haas used the car the defendant furnished not only the car but gasoline, tires and everything just as he did for himself; that on the day of the accident the defendant and Haas with others had been to one of these ball games, and that Haas returned to the house of the defendant, in the automobile in question, for dinner, as did also one Clapp; that at the dinner the defendant gave Haas permission to take the automobile to go to Worcester to have his arm, lamed in the ball game, rubbed, and thereafter, to take Clapp and some ladies to drive; that Haas and Clapp went to Worcester and that after Haas had had the arm rubbed they returned to Shrewsbury; that at the ball game that afternoon a party had been arranged, the ladies in which were to take a luncheon for all; that the party was not to celebrate the victory of the ball team; that on their return to Shrewsbury all those who constituted the party, except Clapp, were waiting for Haas and that they started from the residence of a Mrs. Bliss, which was three quarters of a mile from the defendant's home in Shrewsbury.

Haas testified "that he got the party up on his own hook, and had had these parties at different times; that, when he had these different parties, he used the defendant's car; did not own the car, but owned it that night he guessed; that he stopped working at twelve o'clock that day and was not working for the defendant at the time of the accident; that the defendant let him take the car for his own pleasure; that, during this time, he was receiving weekly pay from the defendant; that the defendant did not have anything to do with the party; he did not invite any of the party, and did not see them; he knew them all, and later married a sister of one of the ladies of the party."

It further appeared that when the defendant told Haas he could

take the car he also told him to be careful, meaning that Haas should be careful during the entire trip.

The accident happened in consequence of the car overturning while passing, on the left, the buggy of the plaintiff Haskell. The defendant, in response to a telephone call from Haas, came to the place of the accident, took the car to his garage and subsequently paid for a new fender made necessary by the collision.

The defendant testified that he "was very intimate with Haas; don't know that I assisted him in any way only that I procured him employment and paid him for it; he has always been working for me when not at school or playing baseball."

If the testimony of the defendant and Haas is to be believed the plaintiff has failed to prove that Haas was the servant of the defendant or was acting within the scope of his employment as a chauffeur at the time of the accident; but has established that the defendant had lent his automobile to Haas for a purpose in which the defendant had no interest. *Herlihy* v. *Smith*, 116 Mass. 265. *Kennedy* v. *R. & L. Co.* 224 Mass. 207. In view, however, of the directed verdict, the plaintiffs have the right to have the testimony weighed in its aspect most favorable to their contention, and, to this end, have all unfavorable testimony disregarded. *Metayer* v. *Grant*, 222 Mass. 254. Striking out such testimony the only evidence that remains is that Haas was in the general employment of the defendant as a chauffeur, that he dined with the defendant on the evening of the accident, that he used the automobile to take to drive his friends, who were possible friends of the defendant, that the defendant knew Haas was to invite the friends, and that the defendant paid, and Haas did not pay, for repairing the damage to the automobile.

Standing alone, these facts, with all favorable inferences, would not warrant a finding that Haas was the servant of the defendant or acting within the scope of his employment at the time of the collision. *Hartnett* v. *Gryzmish*, 218 Mass. 258. Nor do they afford any proof of the contention that the defendant adopted or ratified the acts of Haas because he paid for repairs necessary to be made upon his own automobile. The case is distinguished from *Reynolds* v. *Denholm*, 213 Mass. 576, *Campbell* v. *Arnold*, 219 Mass. 160, *Bourne* v. *Whitman*, 209 Mass. 155, by the fact that in the case at bar the use of the automobile at the time of the

collision was not an incident of Haas's employment, and that it was not then in use in the entertainment of guests of the defendant.

The direction of the verdicts for the defendant was right. In accordance with the terms of the report, the entry is

*Judgment for the defendant.*