ALESSANDRO MELCHIONDA *vs.* AMERICAN LOCOMOTIVE COMPANY.

Suffolk.    December 4, 1917. — January 5, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Agency,* Existence of relation.

In an action against a machine company for injury to the plaintiff's horse and wagon from being run into by a motor truck belonging to the defendant by reason of the negligence of the driver of the truck, the defendant denied that the driver of the truck was its servant. It appeared that the driver was paid

by a milk company that had hired the motor truck from the defendant while one of its own motor trucks was being repaired by the defendant, that when the truck was hired the defendant's manager told an agent of the milk company, who had asked for a truck and driver, that he had no driver to send and that, if the agent of the milk company wanted the truck, he would have to put on his own driver, and the agent of the milk company testified that then "I told him that, if I put on my driver, he would have to be responsible for it," and "I don't think he made any reply." At the time of the accident the motor truck was being used to transport milk for the milk company. *Held,* that there was no evidence that the driver of the motor truck was the servant of the defendant, and that the plaintiff had no right to go to the jury; that, even if the silence of the defendant's manager was evidence of an implied assent to the proposition made to him, this was not evidence that the driver was the servant of the defendant, which never had hired him.

TORT for damage to the plaintiff's horse and pedler's cart and to the fruit contained in the cart from being run into on the morning of August 5, 1913, on Rutherford Avenue in the part of Boston called Charlestown by a motor truck belonging to the defendant by reason of the negligence of the driver of the truck alleged to have been the servant of the defendant.

In the Superior Court the case was tried before *White,* J. The plaintiff testified that, as he was driving carefully along Rutherford Avenue, the defendant's motor truck, coming from the opposite direction, suddenly swerved over to its left hand side of the road, and the rear wheel of the truck struck and ran over the left forward hoof of the plaintiff's horse.

One Worcester, the operator of the truck, called as a witness by the plaintiff, testified that he had been employed by H. P. Hood and Sons as chauffeur for about fourteen months before the accident; that two or three days before the accident he was told by one Farnsworth, the transportation manager for H. P. Hood and Sons, to take this truck and convey milk daily to Forest Hills from Charlestown; that the truck was owned by the defendant and was used by H. P. Hood and Sons, while its own truck was being repaired by the defendant; that he saw no one representing the defendant during this time and received no orders from anyone in regard to the truck or its use, except that Farnsworth told him to take it and drive it to Forest Hills; that on the morning of the accident he was carrying cans of milk to Forest Hills and that as he was passing a team the plaintiff suddenly turned his horse toward the truck, causing the accident.

It was admitted by the plaintiff "that the operator of the truck

was paid his wages for this period by H. P. Hood and Sons, the same as formerly."

One Farnsworth, called as a witness by the plaintiff, testified that he was transportation manager for H. P. Hood and Sons during the time in question; that the Hood Company were having a truck repaired and they hired this truck from the defendant for $10 a day, which was a low figure, but that the Hood Company had bought several trucks from the defendant about that time and were doing a good deal of business with the defendant. He also testified that two or three days before the accident he called up one Gallagher, the manager of the service department of the defendant, and told him that "our No. 3 truck needed repairs and for him to let us have a car and driver to take its place, which he agreed to do," that Gallagher did not furnish a driver for the truck and, when no driver appeared, he, Farnsworth, telephoned to Gallagher again, the morning the truck was due, and Gallagher "told me that he had no driver to send; that if I wanted the truck, I would have to put on my driver. . . . I told him that, if I put on my driver, he would have to be responsible for it." When asked what reply Gallagher made to this statement, the witness Farnsworth said, "I don't think he made any reply." Farnsworth then sent a man to the defendant's place and got the truck.

Gallagher, called as a witness by the plaintiff, testified, that he was service manager of the defendant at the time in question and had authority to rent motor vehicles belonging to the defendant; and that he had no recollection of any such conversation as testified to by Farnsworth.

At the close of the evidence the defendant asked the judge to order a verdict for the defendant. This the judge refused to do and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $350. The defendant alleged exceptions.

*L. C. Doyle,* (*W. I. Badger, Jr.,* with him,) for the defendant.

*H. S. Avery,* for the plaintiff.

BRALEY, J. The defendant is not responsible in damages because it owned the motor truck which through the carelessness of the driver came into collision with the plaintiff's team while both were travellers upon a public way. The plaintiff must go further and offer evidence from which it could be found that the driver was the defendant's servant. *Trombley* v.

*Stevens-Duryea Co.* 206 Mass. 516. *Marsal* v. *Hickey,* 225 Mass. 170.

It is plain from the uncontroverted evidence that while originally the defendant let the truck for hire, which included the services of a driver as in *Shepard* v. *Jacobs,* 204 Mass. 110, 112, it was operated at the time of the accident by an employee of the bailee, who is not shown to have had any knowledge of the conversation subsequent to the contract between the manager of his employer and the defendant's manager, on which the plaintiff relies as sufficient to warrant the jury in finding liability. While the jury doubtless could say that upon the answer to the inquiry why a driver had not been sent, "that he had no driver to send; that if I wanted the truck, I would have to put on my driver," the response was "that, if I put on my driver, he would have to be responsible for it," and that without further colloquy the truck was accepted, and used as previously described, the silence of the defendant, even if found to be an implied assent to the terms proposed, was insufficient to make the employee involuntarily the servant of the defendant with whom he never had sustained any contractual relations. *Morgan* v. *Smith,* 159 Mass. 570. *Samuelian* v. *American Tool & Machine Co.* 168 Mass. 12. *Driscoll* v. *Towle,* 181 Mass. 416. *Clancy's Case,* 228 Mass. 316. It follows that, the plaintiff not having been injured by any negligent act of the defendant, the exceptions must be sustained, and judgment entered for it under St. 1909, c. 236, § 1.

*So ordered.*