ANDREW J. TROTT *vs.* THE YANKEE NETWORK, INC.

Suffolk.    May 7, 1956. — November 19, 1956.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Invited person.    *Wanton or Reckless Conduct.    Electricity.*

A finding was not warranted by the evidence that an employee of a company under a contract with the Federal government to install a sprinkler system throughout a building, part of which was occupied by a radio broadcasting station and the remainder of which had been taken over by the government, was an invitee of the proprietor of the station when he, the employee, went into the station to do work under the contract, to which the proprietor was not a party and which was being performed in the station over the proprietor's objection; and the status of the employee did not change from that of a

licensee at most to that of an invitee while he was removing a cloth of the sprinkler company put by a fellow employee over equipment of the station at the proprietor's request to prevent dirt getting into it. [12–13]

Evidence did not warrant a finding of wanton or reckless conduct on the part of the proprietor of a radio broadcasting station toward an employee of a company installing a sprinkler system in the rectifier room of the station in failing to warn the employee directly of danger to be encountered in that room from uninsulated high voltage electrical equipment with which the employee came in contact to his injury while he was removing a cloth placed over the equipment at the request of the proprietor, who was not shown not to have given a warning to the employee's foreman. [14] RONAN & COUNIHAN, JJ., dissenting.

TORT.  Writ in the Superior Court dated November 21, 1949.

The action was tried before *Goldberg*, J.

In this court the case was argued in May, 1956, before *Qua*, C.J., *Ronan, Wilkins, Spalding*, & *Williams*, JJ., and afterwards was submitted on briefs to all the Justices then constituting the court.

*Walter F. Henneberry*, for the defendant.

*Samuel Abrams*, (*Robert A. Quint* with him,) for the plaintiff.

SPALDING, J.  The declaration in this action of tort contains two counts.  In the first count recovery is sought on the basis of ordinary negligence; in the second count wanton and reckless conduct on the part of the defendant is alleged. A verdict was directed for the defendant on the first count and the second count was submitted to the jury, who returned a verdict for the plaintiff.  The plaintiff excepted to the direction of a verdict on the first count and the defendant excepted to the denial of its motion for a directed verdict on the second count, and the case comes here on a consolidated bill of exceptions.  If the defendant's exceptions are overruled, the plaintiff waives his exceptions.

A summary of the evidence most favorable to the plaintiff is as follows: The defendant operated and maintained a radio broadcasting station in the Hotel Buckminster in Boston.  The portion of the premises occupied for this pur-

pose was under a lease. The remainder of the hotel had been taken over for military purposes by the Federal government. In the summer of 1943 the government entered into a contract with the plaintiff's employer, Rockwood Sprinkler Company, for the installation of a sprinkler system throughout the hotel, including that portion of the premises occupied by the defendant. The defendant was not a party to the contract, and it objected to the installation of the sprinkler because of the appearance the pipes would create in its newly decorated studios and offices, and because of the water hazard the system would create in the control room. The defendant, however, was told by the army officer in charge that it was useless to object; that the defendant would be "bucking the United States Army"; and that the installation would proceed as planned. The defendant's suggestion, through one Robinson, its engineer in charge of maintenance, that the work be done between 2 A.M. and 6 A.M., when the station was shut down, was rejected by the army, because it would involve overtime work for which the contract with the sprinkler company made no provision. Accordingly, the installation of the sprinkler system went forward in the defendant's premises while the defendant was carrying on its broadcasting operations.

In the defendant's portion of the premises was a small room known as the rectifier room. On the door leading to this room, which was unlocked, was a sign reading "Keep Out." The rectifier room contained equipment for converting normal alternating current into direct current with a resulting "boost in voltage." This equipment was described as follows: There was a metallic rack, six feet high, containing five shelves. Each shelf held two rectifiers, on each of which were mounted two mercury vapor tubes five inches in height. Out of the top of each of these tubes projected an anode to which wire was affixed which ran to another part of the rectifier. When these anodes were charged with electricity they carried a current of 600 volts; the voltage from one anode to another was 1,660 volts; and the voltage from an anode to the ground (including the metal frame of

the rack) was 800 volts. The tops of the anodes were not insulated. The defendant's engineer testified that if anyone touched these anodes he could receive an electrical shock. At some time before the work of installing the sprinkler system began, a representative of the sprinkler company pointed out to the defendant what work was contemplated and explained in considerable detail the method and location of the sprinkler head in the rectifier room.

The plaintiff testified in substance that he knew very little about electricity. He also testified that a few hours before the accident he heard Robinson, the defendant's engineer, tell one Curley, who was in charge of the sprinkler company's employees, that he, Robinson, wanted drop cloths put over the rectifiers so that dirt from the ceiling would not get into them. In accordance with this request one Durant, a sprinkler fitter in the employ of the sprinkler company, placed drop cloths over the apparatus. After the pipe was installed, Durant instructed the plaintiff, who was his helper, to "take the drop cloths off the radio tubes." The plaintiff procured a stepladder and placed it beside the rectifier rack. He then climbed up on the ladder and reached over to remove the drop cloth. In so doing his left hand came in contact with one of the anodes while his right hand was on the rack with the result that he received an electrical shock and his hands were severely burned.

1. The trial judge did not err in directing a verdict for the defendant on the first count. Since that count alleges ordinary negligence the plaintiff could recover only if his status at the time of injury was that of an invitee. We are of opinion that the evidence affords no basis for a finding that he was on the defendant's premises at its express invitation. On the contrary he was there despite objections voiced by the defendant to the army officer in charge of the building. Nor was there any implied invitation. At most the evidence points toward tacit assent or acquiescence on the part of the defendant. But that does not constitute an invitation. *Brosnan* v. *Koufman,* 294 Mass. 495, 499. *Couto* v. *Trustees of New York, New Haven & Hartford*

*Railroad,* 312 Mass. 23, 27. *Zaia* v. *"Italia" Societa Anonyma di Navigazione,* 324 Mass. 547, 549.

The plaintiff contends that even if his status on entering the defendant's premises was that of a licensee it had become that of an invitee at the time of the accident. Since he was injured while removing a drop cloth covering the defendant's equipment, the plaintiff argues that he thus became an invitee within the principle illustrated by *Taylor* v. *Goldstein,* 329 Mass. 161, and cases there collected. These cases hold that one may be an invitee by reason of his having conferred a benefit in the performance of something in which the defendant had an interest. We are of opinion that the plaintiff's status on the defendant's premises was that of a licensee and that it was not changed by what was done with respect to the drop cloth. The cloths, which were not infrequently used on jobs, were brought to the job by the sprinkler company and their use was quite as much for the advantage of the company as for the defendant. Indeed, had the company damaged the defendant's property by failing to protect it adequately it might have been liable. We think that it would be a strained application of the *Taylor* v. *Goldstein* principle to hold that the plaintiff by removing a drop cloth which had been put over the equipment by a fellow employee thereby converted his status from a licensee to an invitee.

2. We now turn to the defendant's exception to the denial of its motion for a directed verdict on the second count, which alleges wanton and reckless conduct. What constitutes wanton or reckless conduct has been frequently discussed in our decisions. Perhaps the most comprehensive discussion will be found in *Commonwealth* v. *Welansky,* 316 Mass. 383, at pages 397–401, where numerous authorities are collected. There it was said, "The essence of wanton or reckless conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another" (page 399). See also discussion in *Sheehan* v. *Goriansky,* 321 Mass. 200, at page 204.

In the case at bar there was, to be sure, a failure on the
part of the defendant directly to warn the plaintiff of the
danger to be encountered in the rectifier room, or so the
jury could have found. Whether this would have warranted
a finding of negligence on the part of the defendant we do
not pause to consider. See *Alden* v. *Norwood Arena, Inc.*
332 Mass. 267; *Public Service Co. of New Hampshire* v.
*Elliott,* 123 Fed. (2d) 2 (C. C. A. 1). But in view of the
fact that the plaintiff was a mature person and was working
in a place which to most persons would have appeared to
have been attended with some danger, we cannot say that
the defendant's conduct in failing to warn the plaintiff
involved such a "high degree of likelihood that substantial
harm" would result to him as to warrant a finding that it
was wanton or reckless. *Robbins* v. *Athol Gas & Electric
Co.* 236 Mass. 387, 389. *McIntyre* v. *Converse,* 238 Mass.
592, 595. *Hafey* v. *Turners Falls Power & Electric Co.*
240 Mass. 155, 157. *Washburn* v. *Union Freight Railroad,*
247 Mass. 414. The defendant was justified in relying to
some extent on a warning having been given to the plaintiff
by those in charge of installing the sprinklers. Moreover,
a warning to the foreman, representing the plaintiff's em-
ployer on the premises, would be a natural channel of
communication in the circumstances and would ordinarily
constitute sufficient care on the part of the defendant, or
at least it would suffice to preclude a finding that the de-
fendant's conduct was wanton or reckless. There was evi-
dence that there was such a warning, which, of course, the
jury were not required to believe. But disbelief does not
establish the contrary, and the plaintiff did not show that
no warning was given to the foreman of the plaintiff's
employer, from whom the plaintiff's rights as sublicensee,
or as an invitee of a licensee, were derivative (see *Karlowski*
v. *Kissock,* 275 Mass. 180, 183–184; *Colbert* v. *Ricker,* 314
Mass. 138, 140; *O'Brien* v. *Boston & Maine Railroad,* 325
Mass. 451, 453) and on the issue of warning the plaintiff
had the burden of proof. *Gallo* v. *Leahy,* 297 Mass. 265,
268. *Williams* v. *United Men's Shop, Inc.* 317 Mass. 319, 320.

The case of *Romana* v. *Boston Elevated Railway*, 218 Mass. 76, on which the plaintiff relies, is distinguishable. In that case, the danger resulted from a defect in the defendant's electrical system which caused a pole on the defendant's property to become electrified. The pole was a thing entirely harmless except for the defect, and passers-by could not be expected to be aware of the danger concealed in it. Therefore, this court held that the defendant who was aware of the danger and did nothing about it could be found to have been guilty of wanton or reckless misconduct toward a child who was injured thereby. That is not the situation here.

It follows that the defendant's motion for a directed verdict on the second count ought to have been granted.

*Defendant's exceptions sustained.*
*Plaintiff's exceptions overruled.*
*Judgment for the defendant.*


RONAN, J. I regret that I cannot agree with the foregoing opinion in so far as it reverses the verdict for the plaintiff upon the count charging the defendant with conducting and maintaining a broadcasting station in such a reckless, wilful, and wanton manner that the plaintiff was seriously injured by the passage of a current of electricity through his body.

I agree that the plaintiff occupied the status of licensee, being on the premises not at the invitation of the defendant but merely with its acquiescence. Passive acquiescence does not amount to an invitation. *Hillman* v. *Boston Elevated Railway*, 207 Mass. 478, 483, and cases cited. *Youngerman* v. *New York, New Haven & Hartford Railroad*, 223 Mass. 29. *Prondecka* v. *Turners Falls Power & Electric Co.* 238 Mass. 239. *Bruso* v. *Eastern States Exposition*, 269 Mass. 21. *Brosnan* v. *Koufman*, 294 Mass. 495. *Zaia* v. *"Italia" Societa Anonyma di Navigazione*, 324 Mass. 547. The fact that the sprinkler system might be considered beneficial to the defendant does not raise the plaintiff's status. *Wurm* v. *Allen Cadillac Co.* 301 Mass. 413, 416. *Wilkie* v. *Randolph*

*Trust Co.* 316 Mass. 267, 270.  *Zaia* v. *"Italia" Societa Anonyma di Navigazione*, 324 Mass. 547, 549.

The defendant owed the duty to the plaintiff to refrain from reckless, wilful, and wanton conduct.  *O'Brien* v. *Union Freight Railroad*, 209 Mass. 449.  *McIntyre* v. *Converse*, 238 Mass. 592.  It has recently been said, "The essence of wanton or reckless conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another."  *Commonwealth* v. *Welansky*, 316 Mass. 383, 399.  See *Baines* v. *Collins*, 310 Mass. 523; *Edgarton* v. *H. P. Welch Co.* 321 Mass. 603.

The plaintiff relies upon *Romana* v. *Boston Elevated Railway*, 218 Mass. 76.  That case bears a close resemblance to the case at bar.  In that case a child, a licensee or trespasser on the defendant's land, was permitted to recover for injuries caused by contact with a pole charged with electricity.  There was evidence that the defendant knew of the dangerous condition of the pole and of the habit of children to pass close by the pole.  We held that these facts constituted sufficient evidence of wanton and wilful misconduct to make that issue one for the jury.  In that case, there was a concealed danger of which the defendant had knowledge.  The court, speaking through Sheldon, J., said at page 83, "It is a matter of common knowledge that electricity is a highly dangerous force or substance, and the resulting danger to life or limb could be taken to have been known to the defendant.  It is as if the defendant for its own purposes lawfully had kept there a store of gunpowder or of dynamite, safe while kept as it should be, and then, with knowledge that circumstances had arisen which caused serious danger of an explosion, had permitted or licensed people to pass in that immediate vicinity without giving them any warning against the danger to which it thus consented that they ignorantly should expose themselves.  The force which the defendant knew was liberating itself in and around the pole was one which the defendant has brought thither for its own use.  It was harmless while confined to the system of wires

which the defendant had provided for it. It was no less dangerous than a wild and ferocious animal would have been, if allowed to escape from those wires into the pole. The defendant had notice that the electricity was escaping, and yet neither withdrew the license which it had given for the use of the path, nor made any effort to guard against the danger which it was creating. Under such circumstances the jury could say that its negligence was wanton or reckless. Its conduct in doing nothing to withdraw the license which it had given, or to check the escape of electricity which constantly was creating a new danger and one more than ordinarily serious, or to give any warning to those who were using the path by its license, could be found to be intentional conduct through its authorized representative, such as had a natural tendency to injure others, which was known or ought to have been known to the defendant, accompanied by a wanton and reckless disregard of its probable consequences.''

One Robinson, the technical engineer of the defendant, told Curley, the plaintiff's foreman, in the presence of the plaintiff a few hours before the accident to cover the rectifiers so as to prevent dirt from getting into them. One of the plaintiff's crew subsequently covered the rectifiers. In the early afternoon, one Durant, the pipe fitter with whom the plaintiff was working, told him to remove the drop cloths which was what the plaintiff was attempting to do when he was injured. The ends of the anodes of the rectifiers carried a dangerous voltage of 1,660 volts. They were not insulated. Robinson knew or ought to have known the danger to one taking off the cloth. He had occupied his present position for many years. He knew that he was permitting workmen to labor in close proximity to a dangerous instrumentality. Furthermore, he knew that the anodes would be covered by the drop cloths. Indeed, the cloths might have totally covered the rectifiers, concealed their bluish hue, and prevented one from recognizing the fact that they were in operation. Robinson on the occasion last mentioned said noth-

ing to the effect that using the drop cloths was dangerous or that removing them was especially dangerous, and the plaintiff who heard Robinson tell Curley to use them might well have thought that Robinson would not have given such a direction if he thought it was. The giving of such instructions to one who was to do the work could be found to constitute reckless, wanton, and wilful conduct. It could have been found to amount to an assurance that it was safe to use a drop cloth with the rectifiers. It would be difficult to find a more typical example of reckless, wilful, and wanton misconduct.

The majority seem to think that if Robinson on one or two occasions had warned Curley, the plaintiff's foreman, of the dangers of the rectifiers, the defendant had done its full duty. The jury were not required to believe this evidence and their verdict showed they did not. There was no error if they did not. The credibility of witnesses was for them and not for this court, and we must take the view most favorable to the plaintiff. *Shea* v. *American Hide & Leather Co.* 221 Mass. 282. *Eastern Paper & Box Co. Inc.* v. *Herz Manuf. Corp.* 323 Mass. 138. *DeLeo* v. *Jefferson,* 331 Mass. 317, 318. The jury could find that no warnings were ever given by Robinson or that, if they were, they were overcome by his last message to Curley to use drop cloths. This message could be construed to mean that it was safe for the plaintiff to use a drop cloth. The jury could hardly be expected to accept the testimony of Robinson in stating to Curley on one day that it was dangerous to work in the rectifier room and three days afterward, on the day of the accident, in substance that it was safe to use drop cloths. Anyway, the plaintiff got no warning before removing the cloths when he was injured. All he heard was the express direction of Robinson to use them.

The case comes within *Kelly* v. *Railway Express Agency, Inc.* 315 Mass. 301, where it was stated (page 302), "The issue was for the jury, if anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be

drawn in favor of the plaintiff. If any such combination of circumstances could be found it is, for present purposes, immaterial how many other combinations could have been found which would have led to conclusions adverse to the plaintiff." See *Champlin* v. *Jackson*, 317 Mass. 461; *Mazzaferro* v. *Dupuis*, 321 Mass. 718; *Barton* v. *New York, New Haven & Hartford Railroad*, 332 Mass. 345.

Mr. Justice Counihan joins in this dissenting opinion.