DOROTHY S. CAMPBELL, executrix, *vs.* HAROLD M. LEACH & another.[1]

Suffolk.    March 10, 1967. — April 12, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Negligence,* Elevator, Invited person, One owning or controlling real estate, Violation of regulation.  *Proximate Cause.  Conscious Suffering.*

―――――

[1] The defendants are partners doing business as Leach and Heckel Leather Company.

Campbell *v.* Leach.

Evidence warranted a finding that one hired to do time studies of a
machine on the second floor of a leather plant was impliedly invited to
use as a passenger elevator a freight elevator by the operation of which
he was crushed to death.   [371]

In an action for the death of one hired to do time studies of a machine
on the second floor of the defendants' leather plant and impliedly in-
vited to use a freight elevator as a passenger elevator, a finding of
negligence on the part of the defendants contributing to his death was
warranted by evidence that he was not apprised of any rule against such
use of the elevator nor warned of any dangers thereof, that in violation
of the regulations of the State Department of Public Safety there was
no lighting in the elevator shaft or in the elevator itself and no auto-
matic elevator gong, that the only light near the elevator was fifteen
feet away, and that the decedent, intending to go to the ground floor
after two hours work on the second floor at night, walked onto a hori-
zontal hatch cover in the elevator shaft in the belief that it was the
elevator floor and was crushed to death between the hatch cover and the
shaft wall when the elevator was set in motion upward and pushed the
hatch cover to a vertical position less than a foot from the wall.   [371–
372]

Photographs and other evidence warranted a finding of brief conscious
suffering on the part of a man found dead after having been crushed
between the wall of an elevator shaft and a hatch cover in the shaft
pushed up by the rising elevator.   [373]

Tort for death and conscious suffering.   Writ in the
Superior Court dated June 12, 1962.

The action was tried before *Swift, J.*   There were ver-
dicts for the plaintiff on both counts of the declaration.
The defendant alleged exceptions.

*Philander S. Ratzkoff* for the defendants.

*Gerald May (Michael F. Donlan* with him) for the
plaintiff.

Cutter, J.   The plaintiff seeks to recover for the con-
scious suffering and death of her testator and late husband,
Tristram J. Campbell.   The defendants hired Campbell to
do time studies on a machine on the second floor in their
leather plant.   Prior to December 7, 1961, Campbell had
studied the machine for two days.   On these visits, he did
not use the freight elevator, but used the stairway which
gave access to all four floors of the plant.

One defendant arranged to have Campbell make a time
study of the machine during the 11 P.M. shift on Decem-
ber 6, 1961.   One Barker, a fireman-watchman, on the in-

structions of one Sullivan, the engineer in charge, met Campbell about 10:40 P.M. in an area at the ground floor level. Barker and Campbell then proceeded to the second floor, using the freight elevator which Barker operated.

One Maurice operated the machine on the 11 P.M. shift. Campbell made his time study until about 1 A.M. At this time, Campbell said, "Give me a few minutes," told Maurice to continue working as usual, and walked away. After an interval of time (during which Maurice did not know what Campbell was doing and did not see him), Maurice heard Campbell exclaim, "Oh, my God." Maurice ran toward the elevator, the direction from which Campbell's voice had come. He saw Campbell's "leg sticking out at . . . the second floor." The elevator was stopped. The gate at the second floor landing was down. Campbell's body was caught and horribly crushed.

There was a sign over the elevator which said, "For freight only." Maurice and other employees had been told not to use the elevator when they did not have freight with them. There was evidence from which it could have been found (a) that the elevator was used on occasion, probably against orders, as a passenger elevator; (b) that Campbell was not advised in any respect concerning the elevator; (c) that the sheathing in the elevator car was in poor condition; (d) that there was no inspection certificate in the elevator, and also that in violation of regulations, the elevator shaft and approaches were not adequately lighted, and (e) that the elevator did not have an automatic gong, which would sound twice and be audible above factory noises so that a person at a landing "will know that an elevator is ascending or descending."

The elevator was of a type "outlawed" in 1923, but in 1961 it could lawfully be operated if changed so that it would comply with a new elevator "code," effective in 1961. It was operated by a "shipper rope." On each floor there was a hatch cover which remained horizontal and closed at all times except when the elevator on rising pushed it to a vertical position or when, as the elevator was descending, a

mechanical device raised it to a vertical position. There was a gate at each landing which was raised by hand.[2]

There was also evidence, admitted subject to the defendants' exceptions, from one Stracham (fn. 2), an experienced engineer, who could properly be found to be a qualified expert, (a) that the "only safe operation for the freight elevator" and the effective method of preventing improper use was the employment of a licensed operator and of some method of locking the elevator when no operator was there, and (b) concerning the manner in which, in his opinion, Campbell's death occurred. He testified, "there is only one way that this accident could have happened."[3] The trial judge allowed Stracham very great latitude in testifying about the operation of the elevator, in interpreting written regulations in evidence (cf. *Brunelle* v. *Lowell Elec. Light Corp.* 194 Mass. 407, 411), and in expressing opinions and conclusions concerning many matters relating to this type of elevator.

1. The defendants purport to rely only upon their exception to the trial judge's denial of their motion for a directed verdict. They contend, however, that this exception should be considered on the evidence apart from that portion of Stracham's and a medical examiner's testimony admitted, improperly as they argue, subject to their evidential exceptions. The bill of exceptions presents not only exceptions to the refusal of a directed verdict but also those concerning rulings on evidence. The evidential exceptions are argued in the defendants' brief in relation to the exception concerning the failure to direct a verdict.

---

[2] Stracham, the elevator engineer, checked the gate in 1962, some ten months after the accident, and found that when raised to "seven feet above the car opening . . . [it] would not return itself to normal position." The significance of this discovery, even if not too remote in time from the accident, is far from clear, for the evidence showed that the second floor gate was closed immediately after the accident.

[3] His opinion in substance was that Campbell "standing on the . . . hatchway cover thinking he was standing on the car platform" was lifted when the elevator rose and crushed in the "eight to ten inches between the back . . . [hatchway] cover and the wall." If the lighting, the gate, and an automatic signal had been present and working, "this accident wouldn't have happened."

Campbell *v.* Leach.

The plaintiff has filed a motion to dismiss the bill of exceptions. This motion we deny. There was no such waiver of the evidential exceptions as would make dismissal of the bill of exceptions appropriate.

2. In view of the basis on which the case has been submitted, we think the evidence, wholly apart from that to which the defendants have saved exceptions of any substance, was sufficient to take the case to the jury.

(a) There was evidence from which the jury could reasonably conclude that there was an implied invitation to use the elevator. One defendant himself used the freight elevator as a passenger elevator, and knew that his employees on occasion did likewise despite employer efforts to prevent the practice. Two night watchmen used the elevator on the night of the accident. One took Campbell to the second floor in it. The other used it in making rounds. There was evidence that other employees used it even when not carrying freight. There was no showing that any rule against using the elevator had been communicated to Campbell or that he had been warned of any dangers in its use. *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, 97–98. See *Sweetland* v. *Lynn & Boston R.R.* 177 Mass. 574, 579–580; *Feneff* v. *Boston & Maine R.R.* 196 Mass. 575, 577; *Farber* v. *Mutual Life Ins. Co.* 250 Mass. 250, 252–253, 255. Cf. *Garland* v. *Stetson,* 292 Mass. 95, 99–100 (no invitation from landlord to invitee of tenant to use a freight elevator for other than freight purposes, where there was not shown any violation of the landlord's duty to the tenant); *Paris* v. *Howard D. Johnson Co.* 340 Mass. 739, 741 (no invitation to customer to use a restaurant door, without signs, ordinarily locked and available only for deliveries and a fire exit).

(b) The regulations of the State Department of Public Safety concerning elevators were in evidence. See *Cushing* v. *Jolles,* 292 Mass. 72, 77. Other evidence warranted the conclusion that there was no lighting in the shaftway or in the elevator itself, as required by the regulations and that the only light was from a light over the time clock fifteen feet away. The only machine being operated on the

second floor on the night of the accident was forty-five feet from the elevator. There was evidence that no automatic elevator gong was provided, although required on this type of elevator by the regulations. Violation of these regulations was evidence of negligence. See *Woodcock* v. *Trailways of New England, Inc.* 340 Mass. 36, 40–41.

(c) The violations could have been found to have contributed to the accident. Photographs of Campbell's crumpled body taken after the accident showed at least portions of it within the elevator area. From this and other evidence (including the circumstance that Campbell had left a thermos bottle of coffee and some sandwiches in his automobile and had been working for two hours when he left Maurice), the jury could reasonably have inferred that Campbell entered the elevator area to use the elevator to go to the ground floor. They could also infer (1) that more light would have enabled him to see that he was not entering the elevator car, and (2) that the presence of a warning gong might have permitted his timely escape. The plaintiff was "not bound to exclude every possibility that the accident may have happened through some cause other than the . . . [defendants'] negligence." *Potter* v. *John Bean Div. of Food Mach. & Chem. Corp.* 344 Mass. 420, 425. See *Draper* v. *Cotting,* 231 Mass. 51, 62; *Kelly* v. *Railway Exp. Agency, Inc.* 315 Mass. 301, 302; *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177, 180. The present facts do not leave the circumstances completely to conjecture, as in *Glassman* v. *Hamel,* 341 Mass. 422, 424–425, for Campbell was found in the elevator in such a position that the injury could have occurred only by the elevator squeezing him between a hatch cover and the shaft wall. The inference was strong that he had walked onto the hatch cover while it was horizontal in the belief that it was the elevator floor, and that then either a watchman making his rounds (or perhaps Campbell himself without realizing that he was not in the elevator car) had set the elevator in motion. We rule that there was evidence from which the jury could infer negligence on the part of the defendants contributing to the accident.

3.  The evidence showed that the elevator moved at about a foot a second. It took the hatchway cover four seconds to open completely. Campbell was heard to cry out. His lower extremities were crushed. We think that, from the photographs and other evidence, the jury were warranted in finding brief conscious suffering. *Campbell v. Romanos,* 346 Mass. 361, 367. Cf. *Baldassare* v. *Crown Furniture Co. Inc.* 349 Mass. 183, 195.

4.  Apart from so much of the expert's testimony as was admitted subject to the defendants' exception, the evidence warranted submitting the case to the jury on each count of the declaration. As noted above (see part 1 of this opinion) the defendants do not argue their evidential exceptions except as they are "germane to the determination of the propriety of the . . . decision on their motion for a directed verdict. Otherwise the defendants waive and do not press their evidence exceptions." We recognize that the trial judge may well have failed to keep within appropriate limits the form and content of Stracham's opinion testimony. For example, Stracham was permitted, perhaps with unusual freedom, to testify concerning (a) the interpretation of written regulations; (b) the extent of compliance with building operating standards (cf. *Stewart* v. *Worcester Gas Light Co.* 341 Mass. 425, 435); and (c) the ultimate questions to be decided. See *Duggan* v. *Bay State St. Ry.* 230 Mass. 370, 383. See also *Reed* v. *Edison Elec. Illuminating Co. of Boston,* 225 Mass. 163, 167; *Lavoie* v. *Brockelman Bros. Inc.* 315 Mass. 673, 676–677. Cf. *Commonwealth* v. *Chapin,* 333 Mass. 610, 625–626; *LeBlanc* v. *Ford Motor Co.* 346 Mass. 225, 231–232 ("possible causes of the accident"). We do not consider these evidential points for we accept the defendants' representation that they are not pressing, as such, their exceptions to the admission of evidence.

*Exceptions overruled.*