MICHAEL R. AFIENKO *vs.* HARVARD CLUB OF
BOSTON; CONSOLIDATED SERVICE CORPORATION &
another, third-party defendants.

Suffolk.    December 5, 1973. — May 20, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & WILKINS, JJ.

*Workmen's Compensation Act,* Common employment, Action against
    third person, Independent contractor. *Negligence,* Toward em-
    ployee of independent contractor, One owning or controlling real
    estate, Duty to warn, Violation of regulation, Contributory negli-
    gence. *Evidence,* Opinion: expert; Stated ground of objection.

Evidence that an independent subcontractor had semi-annually washed
    all the windows of a club building for five years preceding the injury to
    the subcontractor's employee, and that the club's maintenance men
    only occasionally washed a window, warranted a finding that window
    washing was "merely ancillary and incidental" to the club's business,
    and the employee was not limited to workmen's compensation
    benefits under G. L. c. 152, §§ 15 and 18. [323-327]
Evidence that an employee of a window washing company informed a
    club's manager that an anchor bolt for attaching safety belts was
    cracked, and that another employee of the company six months later
    examined the bolt before attaching his belt and observed a coating of
    corrosion but no crack, was sufficient to warrant findings that the
    club was negligent in not warning the second employee of a known
    hidden defect, and that the second employee was not contributorily
    negligent. [328-329]
A club had a duty to warn a window washer of a hidden defect on its
    premises of which it was aware, irrespective of whether his work was
    inherently dangerous. [329-330]
Evidence of regulations of the Department of Labor and Industries
    requiring that anchor bolts for window washers be of forged metal
    unless approval were obtained from the Commissioner was material
    and not prejudicial in a negligence case against a defendant which did
    not show that the Commissioner approved of the existing cast bronze
    anchor bolts on the building it occupied. [330-331]
Where there was evidence of defects in the casting of a window washer's
    anchor bolt, whether violation of a state regulation requiring such

bolts to be of forged metal was a "cause" of the plaintiff's injury or merely a "condition" thereof was for the jury to decide. [331-332]

State safety regulations concerning the manufacture and installation of window washers' anchor bolts were relevant and properly admitted in evidence at the trial of an action brought by a window washer injured when such a bolt broke. [332]

Whether a window washer, who did not test an anchor bolt before using it and who was injured when the bolt broke, was contributorily negligent or assumed the risk was for the jury to decide. [332-333]

An answer by an expert witness which contained the words "could," "might well," and "may well" was not mere conjecture where the expert later testified that his answer was based on reasonable scientific certainty. [333-335]

A motion to strike an entire answer as not responsive was properly denied where part of the answer was responsive. [335]

A party cannot appeal denial of its motion to strike testimony on a ground other than that specified to the trial judge. [335]

There was no error in excluding evidence offered by a defendant against third party defendants, where the defendant, found liable for "actual or primary" negligence, was not entitled to indemnity from them. [336]


TORT. Writ in the Superior Court dated June 5, 1967.

The action was tried before *Ponte, J.*

*Joseph J. Hurley* (*Thomas E. Cargill, Jr.,* with him) for the plaintiff.

*Philander S. Ratzkoff & Thomas R. Morse, Jr.* (*Leo V. Boyle* with them) for Harvard Club of Boston.

*Daniel A. Lynch* for Industrial Window Cleaning Corporation.

*William J. McCluskey,* for Consolidated Service Corporation, submitted a brief.

QUIRICO, J.    On April 20, 1966, Michael Afienko (the plaintiff) was employed as a window washer by the Industrial Window Cleaning Corporation (Industrial) and in such capacity was washing windows on the Commonwealth Avenue premises of the Harvard Club of Boston (the club). Devices sometimes called "anchor bolts" were secured in the masonry on each side of the exterior of the windows in the club's building. They were similar to large metal hooks and were intended to act as supports to which a

window washer attaches the ends of his safety belt to hold him secure while standing on a windowsill outside the building. While the plaintiff was washing the exterior of a window on the fourth floor of the club's main building, with his safety belt attached to the anchor bolts on each side of the window, one of the bolts broke. The plaintiff fell to a roof about thirty-five feet below and was injured.

At the time of the accident the club had a written contract with Clean-Rite Company (later known as Consolidated Service Corporation and hereinafter referred to as "Consolidated") under which Consolidated agreed to perform janitorial services for the club, including window washing. Consolidated, in turn, had an oral contract with Industrial under which the latter agreed to wash the club's windows as Consolidated's subcontractor. The club, Consolidated, and Industrial were all "insured persons" within the meaning of the Workmen's Compensation Act, G. L. c. 152, § 1 (6), and as a result of the accident the plaintiff received benefits under the statute from Industrial's insurer.

In June, 1967, the plaintiff began this action of tort against the club to recover for the personal injuries he sustained from his fall. In a third-party action the club impleaded Consolidated and Industrial, seeking indemnification. Before trial the parties entered certain stipulations of fact concerning primarily their workmen's compensation coverage and the plaintiff's status in relation thereto. By order of the trial judge, none of the stipulations was read to the jury. At the conclusion of the evidence, the club filed a motion for a directed verdict, which the judge denied. He submitted the case to the jury with special questions. The jury returned a verdict for the plaintiff against the club in the amount of $200,000 and found in favor of Consolidated and Industrial in the club's action for indemnification against them and in favor of Industrial in Consolidated's action for indemnification against it.

Both the tort action and the club's action for indemnification are before us on the club's bill of exceptions. The principal questions raised concern (1) the propriety of

the judge's denial of the club's motion for a directed verdict in the plaintiff's tort action and (2) the correctness of certain evidentiary rulings.


I.   THE CLUB'S MOTION FOR A DIRECTED VERDICT.

The club contends that it was entitled to a directed verdict on two different grounds: first, that under the terms of G. L. c. 152, § 18, the plaintiff's exclusive remedy against it was under the Workmen's Compensation Act, and he is barred by the doctrine of common employment from bringing a common law action of tort, and, second, that as a matter of law the plaintiff failed to establish that the club was negligent. We discuss each ground separately.

A.   *Defence of Common Employment.*

General Laws c. 152, § 18, provides in effect that an employer who is an "insured person" under the act must furnish compensation coverage to an independent contractor he hires and to the contractor's employees if the employer would be obligated to pay compensation to his own employees had they performed the same work for him.[1] The corollary to the extended obligation imposed on such a "common employer," established by judicial construction of § 18, is an immunity from liability in tort under c. 152, § 15, with respect to any employee who comes within the

---

[1] The text of G. L. c. 152, § 18, as in effect at the time of the accident, is as follows in pertinent part:

"If an insured person enters into a contract, written or oral, with an independent contractor to do such person's work, or if such a contractor enters into a contract with a sub-contractor to do all or any part of the work comprised in such contract with the insured, and the insurer would, if such work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter if the independent or sub-contractors were insured persons. . . . This section shall not apply to any contract of an independent or sub-contractor which is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured, nor to any case where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute the work for the insured or which are under the control or management of the insured."

scope of the common employment.[2] However, both the statutory obligation and the related immunity in tort are expressly limited by the terms of § 18, which provides that "[t]his section shall not apply to any contract of an independent or sub-contractor which is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured . . . [person, i.e., the employer]."

Thus, if in the present case the window washing work in which the plaintiff was engaged at the time he fell was "part of or process in" the club's business of operating a club or hotel facility, its obligation to the plaintiff, an employee of an independent contractor, would be governed by § 18, as the parties stipulated that the club was an "insured person" under G. L. c. 152. Since the plaintiff did not reserve his rights to bring a common law action against Industrial pursuant to G. L. c. 152, § 24, his potential remedies against Industrial and also against the club would be limited to workmen's compensation benefits, and he could not maintain the present action in tort. *Cozzo* v. *Atlantic Ref. Co.* 299 Mass. 260, 262-263 (1938). *McPadden* v. *W. J. Halloran Co.* 338 Mass. 189, 190 (1958). *Stewart* v. *Roy Bros. Inc.* 358 Mass. 446, 454-455 (1970). If, however, the plaintiff's window washing work were considered "merely ancillary and incidental" to the club's business, then the club would not be protected by G. L. c. 152, § 18, and under § 15 of that chapter the plaintiff would be entitled to bring a common law action for personal injuries.[3]

---

[2] For a comprehensive analysis of § 18, both alone and in relation to G. L. c. 152, §§ 15 and 24, see *Clark* v. *M. W. Leahy Co. Inc.* 300 Mass. 565, 568-569 (1938). See also *Tindall* v. *Denholm & McKay Co.* 347 Mass. 100, 101, fn. 3 (1964); *Stewart* v. *Roy Bros. Inc.* 358 Mass. 446, 454-455 (1970).

[3] We are not concerned here with St. 1971, c. 941, § 1, which amended G. L. c. 152, § 15, by adding the following sentence: "Nothing in this section or in section eighteen or twenty-four shall be construed to bar an action at law for damages for personal injuries or wrongful death by an employee against any person other than the insured person employing such employee and liable for payment of the compensation provided by this chapter for the employee's personal injury or wrongful death and said insured person's employees"; § 2 of such chapter expressly limited the application of the amendment to causes of action arising after the effective date of the amendment.

Our cases have clearly established that it is ordinarily a question of fact whether particular work performed by an independent contractor or his employees is or is not "part of or process in" a principal employer's business. *Cozzo* v. *Atlantic Ref. Co., supra*, at 264. *Cannon* v. *Crowley*, 318 Mass. 373, 377 (1945). *Dubois* v. *Soule Mill*, 323 Mass. 472, 476 (1948). *MacKay* v. *Ratner*, 353 Mass. 563, 565 (1968). Only where the circumstances of a particular case indicate that such work is "plainly" a part of the employer's business have we considered this question to be one of law. *McPadden* v. *W. J. Halloran Co., supra*, at 192. *Tindall* v. *Denholm & McKay Co., supra*, at 101. Cf. *Stewart* v. *Roy Bros. Inc., supra*, at 455-456. It is the club's contention that this case falls within the latter category. It argues that the window washing performed by the plaintiff at the time of the accident was part of the "routine maintenance and cleaning" of its facilities which this court has recognized "as matter of law are part of the business of a mercantile enterprise even when regularly performed by the employees of an independent contractor hired by the owner for that purpose," and concludes that the trial judge erred in denying its motion for a directed verdict on this ground and in submitting the issue to the jury in the form of special questions.[4] We disagree.

---

[4] The judge submitted ten special questions to the jury, the first four of which were as follows:

"1. Was the window washing to be done by Consolidated Service Corporation under its contract with Harvard Club of Boston a part of or process in the trade or business of Harvard Club of Boston?

"2. Was the window washing to be done by Consolidated Service Corporation under its contract with Harvard Club of Boston merely ancillary or incidental to the trade or business of Harvard Club of Boston?

"3. Was the window washing done or to be done by Industrial Window Cleaning Corporation as subcontractor of Consolidated Service Corporation a part of or process in the business of Harvard Club of Boston?

"4. Was the window washing done or to be done by Industrial Window Cleaning Corporation as subcontractor of Consolidated Service Corporation merely ancillary or incidental to the trade or business of Harvard Club of Boston?"

The jury answered "no" to the first and third questions and "yes" to the second and fourth questions.

See *infra*, at 336-337, fn. 7, for a description of the other six questions and the jury's answers thereto.

We review the evidence in the light most favorable to the plaintiff. *Carr* v. *Arthur D. Little, Inc.* 348 Mass. 469, 471 (1965). *Stewart* v. *Roy Bros. Inc.* 358 Mass. 446, 448 (1970). Industrial washed the club's windows from 1961 through 1966, always as a subcontractor of Consolidated, and was the "person responsible" for cleaning the windows at the time of the accident in 1966. Industrial had five or six window washers on its payroll, and its president hired only experienced washers who were "union men." Industrial furnished its employees with all their window washing tools — safety belts, pails, sponges, squeegees, and ladders — and the plaintiff was using a bucket, squeegee, and belt supplied by Industrial on the day of the accident. There were no window washers on the club's payroll from at least 1963 up to the time of the accident, and the club owned no window washer's safety belts. The club had three shifts of its own employees to conduct the operation of the club at the time of the accident, which included two full time maintenance men for "the usual carpentry, plumbing and electrical work," a painter, and maids and housemen. On occasion it was necessary for one of these employees to clean a window when the "contract window cleaners" were not there, but the club's manager had never seen one of its employees use a window washer's belt, and none of them participated in the window cleaning operation described in the club's contract with Consolidated. The contract between the club and Consolidated in effect at the time of the accident required that all windows on the first and second floors be washed on a monthly basis and all other windows in the building be washed semi-annually. The plaintiff was engaged in one such semi-annual washing at the time he fell. In the opinion of the club's manager, window washing was a very minor part of the overall operation of the club.

We believe the jury could find on this evidence that the window washing done by Industrial on the club's premises, particularly during the semi-annual cleanings when the windows above the first and second floors were washed, was a dangerous task requiring specialized training and equipment and not a "routine maintenance function" as the club

contends. They could also find that the club had neither the trained employees nor the necessary equipment but in fact had used Industrial to do the work for a substantial number of years prior to the accident. See *Cannon* v. *Crowley*, 318 Mass. 373, 376 (1945). Cf. *McPadden* v. *W. J. Halloran Co.* 338 Mass. 189, 192 (1958).

There was clearly enough evidence to warrant the judge in submitting to the jury the question whether the window washing services performed by Consolidated and Industrial were "part of or process in" the club's business or "merely ancillary and incidental . . . [thereto]." Despite the club's argument to the contrary, we do not understand our cases to hold that as a matter of law maintenance activities such as window washing always constitute part or process of a "mercantile enterprise." Indeed, *Hill's Case*, 268 Mass. 491, 492-493 (1929), and *Dubois* v. *Soule Mill*, 323 Mass. 472, 475-476 (1948), relied on by the club, appear to provide support for the contrary principle that the question whether a particular activity is a part of or process in another business is usually one of fact. To the club's contention that the window washing was a necessary and integral part of its operation "as a quality organization offering quality services in a gracious atmosphere to a select clientele," we again observe that "[i]t is manifest that it cannot properly be said that everything that is reasonably necessary to be done for the purpose of carrying on a trade or business is a part of or process in the trade or business within the meaning of § 18." *Caton* v. *Winslow Bros. & Smith Co.* 309 Mass. 150, 155 (1941). *Hudyka* v. *Interstate Tire & Brake Stores, Inc.* 360 Mass. 102, 104-105 (1971).

We hold that there was no error in the denial of the defendant's motion for a directed verdict based on the defence of common employment.

B. *The Plaintiff's Proof of the Club's Negligence.*

The plaintiff was the employee of an independent contractor working on the club's premises. The club thereby owed him the same duty it owed its own employees — to disclose hidden or concealed defects on the premises of which it was aware or should have been aware through the

exercise of reasonable care. *Hannon* v. *Hayes-Bickford Lunch Sys. Inc.* 336 Mass. 268, 272 (1957). *Burr* v. *Massachusetts Elec. Co.* 356 Mass. 144, 147 (1969), and cases cited.

1. The main thrust of the club's argument on the issue of negligence is that the plaintiff failed to show that any defect in the anchor bolt was hidden or not discoverable on a reasonable (and required) inspection by the plaintiff, and thereby failed as a matter of law to prove that the club violated its duty to warn him of or disclose defective conditions. Viewing the evidence in the light most favorable to the plaintiff, we cannot accept the club's contention.

The evidence would have permitted the jury to find the following. The valet room anchor bolt which broke and caused the plaintiff to fall was made of cast bronze and there were defects in its casting; the bolt was corroded, thereby causing a smooth, green coating to form which covered its surface. On the date of the accident, the plaintiff inspected the bolt before and after he hooked his safety belt onto it and saw the green coating but no cracks. Six months prior to the plaintiff's accident, John Duffy, another window washer employed by Industrial, had examined the anchor bolt in question and had seen a crack in the neck of the bolt. He had informed the club's manager that the bolt was rotted and cracked, asked him if he would check the bolts in the valet room and told him the bolts should be replaced by steel hooks. Duffy did not tell the plaintiff about his discovery. The club's manager had no recollection that he or anyone on his behalf had specifically inspected the bolts. During his tenure (since 1963) the club had no inspection or maintenance program which required the anchor bolts to be checked or inspected.

To recover, the plaintiff had to prove that his injury was caused by the club's failure to warn him of the hidden defect in the anchor bolt and that this defect was one of which it should have been aware. *Williams* v. *United Men's Shop, Inc.* 317 Mass. 319, 320 (1944). *Hannon* v. *Hayes-Bickford Lunch Sys. Inc.* 336 Mass. 268, 272 (1957). On the

evidence summarized above, the jury could have found that the anchor bolt broke because of defective casting and that such defective casting and the signs indicating its existence were hidden and not obvious. They also could have found that the club, through its manager, was aware of the defect, and finally, because there was no evidence to indicate the contrary, they could have inferred that the plaintiff was not warned about the condition. There was sufficient evidence to warrant the jury in finding the club negligent.

We do not agree with the club that because Duffy testified to having seen a crack in the anchor bolt six months before the plaintiff's accident, the plaintiff is barred from recovery. The plaintiff testified that Duffy had not told him about the defective bolt, and in any event, he is not bound by Duffy's testimony as it did not relate to the extent of his own knowledge. Cf. *Hannon* v. *Hayes-Bickford Lunch Sys. Inc.*, *supra*, at 273; *Findlay* v. *Rubin Glass & Mirror Co.* 350 Mass. 169, 171-172 (1966).[5]

Nor can we accept the club's contention that its motion for a directed verdict should have been allowed because the plaintiff did not sustain his burden of showing a failure to warn of any hidden defect, citing *Trott* v. *Yankee Network, Inc.* 335 Mass. 9, 14 (1956). The situation when the claimed hidden defect or hidden danger consists of a faulty condition on property under the owner's control is very different from when it arises from the inherently dangerous character of the work involved, irrespective of any such defect. Both the *Trott* case and *DeMartin* v. *New York, N. H. & H. R.R.* 336 Mass. 261 (1957), also cited by the defendant, fall within the latter category. Here, however, where the danger presented by the anchor bolt was due to a hidden defect which the club had not corrected, the club could not

---

[5] There was testimony by the plaintiff's expert witness which tended to explain how a crack could have been visible on the anchor bolt in October and then could have been covered over and hidden by the following April. We consider later in the opinion exceptions raised by the club with respect to this testimony but, as our discussion above indicates, we have concluded that even without it the jury would be permitted to find that the defective condition of the anchor bolt was hidden at the time of the plaintiff's accident in April, 1966.

assume that a warning was not needed. We hold that the jury could have inferred from the evidence that no such warning had been given to the plaintiff notwithstanding the absence of direct testimony on the issue.

2. The club's second major argument with respect to the plaintiff's proof of its negligence relates to the admission in evidence of certain window cleaning safety regulations promulgated by the Department of Labor and Industries, Division of Industrial Safety, and in effect at the time of the accident. The regulations are entitled "Revised Rules and Regulations for the Prevention of Accidents in Window Cleaning" and relate to both equipment (e.g., safety belts) and methods to be used by the person actually performing the window washing operation, and equipment or devices (e.g., anchor bolts) to be installed on or near the windows that are to be washed. The club does not deny that the regulations apply to its premises but excepts to the admission in evidence of specific sections.

The title in addition to the text of the regulations indicates their purpose, and a finding that any of them had been violated would be evidence of negligence as to all the consequences they were intended to prevent. *Kralik* v. *LeClair*, 315 Mass. 323, 326 (1943). *Campbell* v. *Leach*, 352 Mass. 367, 371-372 (1967). It is the club's contention that the plaintiff cannot rely on any alleged violation of the regulations as evidence of negligence because he failed to prove any such violations or alternatively if violations did occur, that they were causally related to his accident.

Our decision on this contention has no bearing on the denial of the club's motion for a directed verdict since we have previously decided that there was sufficient evidence apart from the regulations to warrant the jury in finding the club negligent. However, the club also argues that given the plaintiff's failure of proof, the regulations were immaterial and that it was seriously prejudiced by their admission because they provided the jury with an alternative basis for a finding of liability. We do not agree.

Section 10 of the regulations (one of the sections which the club argues should not have been admitted) provides in

part: "All metals used in the manufacture of anchors [and] anchor fastenings `. . .` shall be of heavy forged metal, properly annealed after forging." The jury could have found that the anchor bolt at issue was made of cast bronze rather than "forged metal" and thus violated the regulation.

Section 46 provides that anchor bolts in place on December 1, 1948, as the club's were, could still be used if approval were obtained from the Commissioner of Labor and Industries. We agree with the plaintiff that the burden was on the club to show that such approval had been obtained. Section 46 provides an exception to the general rule found in § 10 and is separately stated. Applying established principles of statutory construction, it is clear that if the club intended to rely on such an exception it had the burden of proving that it came within the terms of the exception. Furthermore, in this particular case, the existence or nonexistence of the Commissioner's approval was a fact that would be more readily ascertainable by the club than by the plaintiff. See *Ansell* v. *Boston*, 254 Mass. 208, 211 (1926); *Murray* v. *Continental Ins. Co.* 313 Mass. 557, 563-565 (1943); *Sanford* v. *Boston Edison Co.* 316 Mass. 631, 635-636 (1944). Since no evidence was presented to show that the approval was obtained, we conclude that the jury could find that the exception provided in § 46 of the regulations to the requirements of § 10 did not apply to the club.

We also conclude that the jury could find that the violation of § 10 was causally related to the plaintiff's injuries. All the evidence on the point tended to show that the anchor bolt broke because of defects in the casting. From the testimony of the plaintiff's expert witness to the effect that the "defects in the casting [were] caused by the shrinking of the liquid metal as it freezes, causing voids or hollow spaces, and . . . hot tear[s]," and from his testimony describing the difference between casting and forging procedures, the jury could infer that such defects would not have existed in a bolt made of forged metal, as required by the regulation. The question whether the violation of a

safety regulation is a "cause" contributing to the plaintiff's injury or merely a "condition" thereof is ordinarily one of fact and was properly treated as such in this case. *Kralik* v. *LeClair*, 315 Mass. 323, 326 (1943). See *Cushing* v. *Jolles*, 292 Mass. 72, 77 (1935); *Campbell* v. *Leach*, 352 Mass. 367, 372 (1967).

The club objects to the admission of other sections of the regulations as well, arguing with respect to some that there was no evidence of violations and with respect to others that, even if such violations were proved, they would not permit recovery. All of the sections objected to relate to either the manufacture or installation of anchor bolts and concededly apply to the club's premises. They were therefore relevant to the case. While there may be some merit to the club's objections with respect to the plaintiff's failure to prove violations of some of these sections, there is nothing in the bill of exceptions to indicate how the judge instructed the jury on this point or otherwise to show that the defendant was prejudiced by their admission.

3. Much of the club's argument concerning the plaintiff's alleged failure to prove it negligent is in essence an assertion that the plaintiff is barred from recovery by his own contributory negligence. The club contends that even if the defects in the anchor bolt were not entirely visible at the time of the accident, the plaintiff's testing and inspection of the bolt were as a matter of law unreasonable in the circumstances.

The burden of proving contributory negligence was on the club. It is a rare case where we can say that the party having the burden of proof as a matter of law has sustained it. *Stewart* v. *Roy Bros. Inc.* 358 Mass. 446, 453 (1970), and cases cited. This case is no exception. This is not a case where an employee's injury arose directly out of repair work he had agreed to perform. Cf. *Favereau* v. *Gabele*, 262 Mass. 118, 119-120 (1928); *Campbell* v. *Rockland Trust Co.* 311 Mass. 663, 666-667 (1942); *Haak* v. *McGlame*, 357 Mass. 764, 765 (1970). Nor is it even a case where the employee was injured while participating in a particular phase of building repair work or renovation. Cf. *Hannon* v.

*Hayes-Bickford Lunch Sys. Inc.* 336 Mass. 268, 272-273 (1957); *Sparks* v. *Kepnes,* 339 Mass. 349, 352 (1959). Rather, the window cleaning performed by the plaintiff here constituted part of the ongoing operation of the club facility, and nothing about the nature of the work indicated the likelihood of defective conditions. The plaintiff had a right to rely on the club's duty to inspect the condition of its property as a necessary safety measure, and to warn him of any hidden defects. *Carroll* v. *Metropolitan Coal Co.* 189 Mass. 159, 161 (1905). *Levesque* v. *Charlton Mills,* 222 Mass. 305, 307-308 (1915). *Gobern* v. *Metals & Controls, Inc.* 418 F. 2d 290, 294-295 (1st Cir. 1969). See *Lajeunesse* v. *Tichon's Fish & Fillet Corp.* 328 Mass. 528, 530-531 (1952).

Although the club makes some reference to the plaintiff's assumption of the risk in its brief, its argument is indistinguishable from that relating to its allegation of contributory negligence. We hold that the question of the plaintiff's contributory negligence or assumption of the risk was for the jury to decide.

## II.   Testimony of Dr. Carl Floe.

Dr. Carl Floe, a professor of metallurgy at Massachusetts Institute of Technology, was called by the plaintiff to testify as an expert with reference to the anchor bolt involved in the plaintiff's fall and resulting injury. In direct testimony, after he described the bolt and various tests which he performed on it, he was asked a hypothetical question which asked him to assume various facts and then concluded: "[D]o you have an opinion with reasonable scientific certainty, based upon your education, training, experience and background in the metallurgy field, as to the cause of the breaking or failure of the bolt in question known as Exhibit 19?" The witness answered that he did have such an opinion and he was then asked what it was. His answer is set forth in full in the margin.[6] Counsel for the

---

[6] "My opinion is that this was a defective casting, to start with; that even in October, 1965, it must have been close to the point of failure. In other words, there

club then moved that the answer be struck because "[i]t contains 'could,' 'might well,' or 'may well,' and I submit it is not responsive to the question." Before ruling on the motion the judge asked the witness: "In your answer you have said 'could,' but that is your opinion based on reasonable scientific certainty, is it?" The witness answered that it was, whereupon the judge denied the motion to strike. Counsel for the plaintiff then asked: "And in your answer, you have dealt with probabilities based upon the hypothesis, is that right?" to which the witness answered that he had.

We now consider the several grounds on which the club bases its claim that it was error to deny its motion to strike the answer.

The club argues that because the witness used the words "could," "might well," and "may well" in his answer, the net result was that "the answer as a whole . . . was merely guess or conjecture on . . . [his] part." This argument is without merit because it totally ignores the two questions quoted above which were put to the witness by the judge and the plaintiff's counsel and his answers thereto.

The basic issue is whether we are dealing with "[a] mere guess or conjecture by an expert witness in the form of a conclusion from basic facts that do not tend towards that conclusion any more than towards a contrary one [and therefore] has . . . no evidential value" (*Ruschetti's Case,* 299 Mass. 426, 431 [1938]; *Hachadourian's Case,* 340 Mass. 81, 85-86 [1959]; *Berardi* v. *Menicks,* 340 Mass. 396, 401-402 [1960]; *Oberlander's Case,* 348 Mass. 1, 5-6 [1964];

---

were sufficient cracks and voids and discontinuities in this particular area where the fracture occurred to make it a very weak material.

"I think that the man who was washing the window in October, '65, may well have opened up one of these cracks to make it visible as he put the channel onto the anchor, jerked on it, put loads on it with his body in different directions. He could open up one of these cracks to make it visible through the copper-carbonate deposit, which is a very brittle deposit.

"I think subsequent to this, further corrosion had occurred not only on the surface but now down in the opened-up crack. In other words, moisture containing these corrosive agents would seep into this crack, would corrode it, products of corrosion would expand and could well conceal the crack so that a man in April, 1966 may well not have observed it."

*King's Case,* 352 Mass. 488, 489-492 [1967]), or whether we are dealing with evidence which shows the existence of a causal relation between the condition of the anchor bolt and the injury to the plaintiff (*DeFilippo's Case,* 284 Mass. 531, 534-535 [1933]; *Duggan's Case,* 315 Mass. 355, 358-359 [1944]; *Josi's Case,* 324 Mass. 415, 417-419 [1949]; *Kerr* v. *Palmieri,* 325 Mass. 554, 559-560 [1950]; *Berardi* v. *Menicks,* 340 Mass. 396, 401-402 [1960]). We hold that this case falls in the latter group.

The club also argues that the answer of the expert witness should have been struck because it was not responsive to the question. The motion was to strike the entire answer, and it was not limited to any particular part which was claimed to be unresponsive. The first part of the answer was clearly responsive, and the court was not required to allow such a motion unless no part of the answer was responsive. Since "[t]he motion to strike was too broad, for it included competent as well as incompetent evidence," it was properly denied. *Bryer* v. *P. S. Thorsen Co. of Mass.* 327 Mass. 684, 687 (1951). See *Commonwealth* v. *Zaidon,* 253 Mass. 600, 602 (1925).

The club has urged on us the further argument that the answer of the expert should be struck because it "included evidence incompetent because based upon unwarranted assumptions." This ground is not now open to the club because it was not included in the grounds stated to the trial judge as the basis for the motion. "Having stated specifically the basis of . . . [its motion], the defendants, in fairness, ought not to be permitted to urge other grounds in this court." *Kagan* v. *Levenson,* 334 Mass. 100, 107 (1956). *Draper* v. *Turner,* 339 Mass. 616, 618 (1959).

### III.   THE CLUB'S THIRD-PARTY ACTION FOR INDEMNIFICATION.

The club's third-party action contains two counts against Consolidated, one claiming breach of contract and one claiming negligence, and one count against Industrial

claiming negligence. The club claims that the admission in evidence against it of Dr. Floe's testimony and of certain sections of the window cleaning safety regulations was prejudicial error in its third-party action. Since we have previously disposed of these claims in relation to the plaintiff's tort action, we do not consider them again here. The only separate issue the club raises with respect to the third-party action is whether the judge erred in refusing to admit certain sections of the safety regulations against the two third-party defendants, presumably as bearing on the issue of whether they were negligent.

The club attempted to introduce in evidence four sections of the regulations. The first was merely a general statement that "[n]o employer, owner, agent, manager or tenant" shall permit window cleaning to be done except in accordance with the regulations. The other three related to the installation and design of anchor bolts and had no application to persons or parties not in control of the property. They were therefore irrelevant to the club's actions against Consolidated and Industrial and were properly excluded.

Since the jury found that the club was itself negligent,[7] it is not entitled to indemnification from either Consolidated or Industrial. "Indemnity is permitted only when one does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another." *Stewart* v. *Roy Bros. Inc.* 358 Mass. 446, 459 (1970). *Ford* v. *Flaherty,* 364 Mass. 382, 385-386 (1973). Given the jury's findings, it is immaterial whether either consolidated or Industrial was negligent and it is therefore immaterial whether the regulations the club attempted to introduce as bearing on the two parties' alleged negligence were properly or improperly excluded. The verdict was properly entered against the club in the third-party action. Cf. *Hollywood Barbecue Co. Inc.* v. *Morse,* 314 Mass. 368, 369-370 (1943).

*Exceptions overruled.*

---

[7] The jury's findings were in the form of responses to six special questions submitted by the judge which asked as to the club, Consolidated, and Industrial

whether each was guilty of "actual or primary negligence" or guilty of "constructive or secondary negligence." The jury answered that the club was guilty of such "actual" negligence but that neither Consolidated nor Industrial was guilty of either "actual" or "constructive" negligence.